**IN THE SUPREME COURT OF TENNESSEE**
**AT NASHVILLE**

FOR PUBLICATION

STATE OF TENNESSEE,        )     **Filed:** April 28, 1997

                    )

     Appellee,         )     DAVIDSON COUNTY

                    )

v.                  )     Hon. Walter C. Kurtz,

                    )     Judge

HENRY EUGENE HODGES,   )

                    )

     Appellant.       )     Supreme Court

                    )     No. 01-S01-9505-CR-00080

**FILED**

April 28, 1997

Cecil W. Crowson
Appellate Court Clerk

FOR APPELLANT:           FOR APPELLEE:

Brock Mehler              Charles W. Burson
Nashville, Tennessee        Attorney General & Reporter

Donald Dawson            Kathy Morante
Bruce, Weathers, Corley, Dougman & Lyle  Deputy Attorney General
Nashville, Tennessee        Nashville, Tennessee

Michael E. Terry           Victor S. Johnson, III
Nashville, Tennessee        District Attorney General
                             Nashville, Tennessee

                             Thomas B. Thurman
                             Assistant District Attorney General
                             Nashville, Tennessee

                             Renee R. Erb
                             Assistant District Attorney General
                             Nashville, Tennessee

# O P I N I O N

TRIAL COURT AND
COURT OF CRIMINAL APPEALS AFFIRMED.      DROWOTA, J.

In this capital case, the trial court accepted pleas of guilty entered by the defendant, Henry Eugene Hodges, to first-degree premeditated murder [1] and especially aggravated robbery.[2]  The trial court conducted a capital sentencing hearing to determine the sentence on the conviction for premeditated murder in accordance with Tenn. Code Ann. § 39-13-204(1991 Repl. & Supp. 1996).  In the sentencing hearing, the jury found three aggravating circumstances: (1) "[t]he defendant was previously convicted of one or more felonies, other than the present charge whose statutory elements involve the use of violence to the person;" (2) "[t]he murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death;" and (3) "[t]he murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or attempting to commit, or fleeing after committing a robbery."  Tenn. Code Ann. § 39-13-204(I)(2), (I)(5) and (I)(7) (1991 Repl.).  Finding that the three aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt, the jury sentenced the defendant to death by electrocution.

On direct appeal to the Court of Criminal Appeals, the defendant challenged the sentence of death raising sixteen claims of error, each with numerous subparts.  After fully considering defendant's claims, the Court of Criminal Appeals affirmed the trial court's judgment.  Thereafter, pursuant to

_____

[1]The defendant pleaded guilty to both premeditated and felony first-degree murder.  The trial court merged the pleas and the defendant was convicted of premeditated first-degree murder.

[2]Although not pertinent to this appeal, the trial court found the defendant to be a multiple and dangerous offender and imposed a forty year sentence for the conviction of especially aggravated robbery which is to be served consecutive to the death penalty.

Tenn. Code Ann. § 39-13-206(a)(1) (1996 Supp.),[3] the case was docketed in this Court.

The defendant raised numerous issues in this Court, but after carefully examining the entire record and the law, including the thorough opinion of the Court of Criminal Appeals and the briefs of the defendant and the State, this Court, on November 21, 1996, entered an Order limiting review and setting the cause for oral argument[4] at the February 1997 term of Court in Nashville. See Tenn. S. Ct. R. 12.[5]

For the reasons explained below, we have determined that none of the alleged errors affirmatively appear to have affected the sentence imposed. Moreover, the evidence supports the jury's findings as to aggravating and mitigating circumstances, and the sentence of death is not disproportionate or arbitrary. Accordingly, the defendant's sentence of death by electrocution is affirmed.

---

[3]"Whenever the death penalty is imposed for first degree murder and when the judgment has become final in the trial court, the defendant shall have the right of direct appeal from the trial court to the Court of Criminal Appeals. The affirmance of the conviction and the sentence of death shall be automatically reviewed by the Tennessee Supreme Court. Upon the affirmance by the Court of Criminal Appeals, the clerk shall docket the case in the Supreme Court and the case shall proceed in accordance with the Tennessee Rules of Appellate Procedure."

[4]This case was originally argued before this Court with Justice Penny J. White participating. Review was limited and the case reargued before this Court with Justice Janice H. Holder participating.

[5]Tennessee Supreme Court Rule 12 provides in pertinent part as follows: "Prior to the setting of oral argument, the Court shall review the record and briefs and consider all errors assigned. The Court may enter an order designating those issues it will review. Selection of such issues will be based on the criteria of T.R.A.P. 11(a)."

## FACTUAL BACKGROUND

The defendant, Henry Eugene Hodges, entered a guilty plea and was convicted of premeditated first-degree murder. Thereafter, the penalty phase of the trial commenced. The State presented proof of the circumstances of the offense through the testimony of Trina Brown, the defendant's fifteen-year-old girlfriend. Brown testified that one week before the murder she and the twenty-four-year-old defendant, who were living with the defendant's brother in Smyrna, Tennessee, decided to move to Florida. To get money for the move, Hodges, a male homosexual prostitute, told Brown that he would rob and kill the next person who propositioned him. Hodges discussed with Brown how the crimes would be carried out. Hodges repeated these statements on May 14, 1990, the day of this murder.

On the night of May 14, Brown and Hodges went to Centennial Park in Nashville. When the victim, Ronald Bassett, approached, Hodges talked with him, and they left together in the victim's vehicle and went to the victim's residence at 3133A, Parthenon Avenue, across from Centennial Park. Ten or fifteen minutes later, Hodges returned to the park on foot, and along with Brown, drove back to the victim's residence in his own car. Hodges told Brown to lie down in the backseat of the car so no one could see her. When they arrived at the victim's residence, Hodges told Brown to wait in the car. After an unspecified period of time, Hodges returned to the car, wearing gloves, and asked Brown to come into the house. Brown testified that when she arrived, Bassett was lying face down on the bed in his bedroom with a pillow over his head. Hodges had bound his feet together with duct tape and had handcuffed his hands. While

-4-

Bassett lay helplessly, Brown and the defendant ransacked the house searching for items of value. After obtaining the personal identification number for the victim's automatic teller card, Brown and the defendant "took a break," drank a coke, and discussed whether to kill Bassett. Brown testified that she told Hodges to kill Bassett to prevent their arrest. Hodges then went into the bedroom and, ignoring the victim's pleas not to kill him, strangled Bassett to death with a nylon rope. Brown testified that she heard Bassett moan and make a choking sound and that it took about five minutes for Bassett to die.

In an attempt to remove any fingerprints, the defendant wiped off various items in the residence. After turning the air conditioner in Bassett's bedroom on high to prevent discovery of the body, Hodges and Brown left the victim's residence, taking the victim's automobile and several items of personal property, including jewelry, a gun, and a VCR. After using Bassett's automatic teller card to withdraw the twenty-four-hour maximum of four hundred dollars from his account, the pair returned to the house of the defendant's brother and went to bed. The next day, having learned that the victim's body had been discovered, Brown and the defendant abandoned the victim's car in rural Rutherford County and drove to Georgia in their own car. They were eventually arrested in North Carolina. Items of the victim's personal property were found in their possession at this time. Also, the defendant's fingerprints were found on items inside Bassett's home, and Brown had been photographed withdrawing money with Bassett's automatic teller card.

Testifying for the State at the sentencing hearing, Dr. Charles Harlan, the

chief medical examiner for Metropolitan Nashville and Davidson County, confirmed that Bassett had died from ligature strangulation. Dr. Harlan opined that Bassett would have remained alive and conscious for at least three and perhaps as long as five minutes during the strangulation. Harlan also found abrasions on the victim's wrists consistent with handcuffs.

The State proved that the defendant had been convicted of armed robbery, attempted kidnaping and robbery in Hamilton County in 1984. The State also established that the defendant had been convicted of murder in Fulton County, Georgia, in July 1990. The record reveals that the Georgia killing occurred when the defendant and Brown arrived in Atlanta after murdering Bassett. Hodges made arrangements with a man to engage in homosexual acts for an agreed price. Hodges accompanied the man to his motel room, but when the man was unable to pay the agreed price, Hodges murdered him.

In mitigation, the defendant testified[6] and also presented the testimony of his mother, his brothers and Dr. Barry Nurcombe, a child psychiatrist. This proof showed that the defendant was the next to youngest of his mother's five sons. His mother and father were not married. His father was actually married to another woman, but engaged in what one of the witnesses described as an "irregular union" with the defendant's mother for eighteen years. The defendant's father abused the defendant's mother and was strict with the defendant's brothers, three

_____

[6]The defendant testified only about his personal history, particularly his alleged sexual abuse at age twelve. In this pre-Cazes proceeding, the trial court correctly limited the State to questions concerning personal history and did not allow cross-examination on the circumstances of the offense. See State v. Cazes, 875 S.W.2d 253, 264-267 (Tenn. 1994).

-6-

of whom were the children of another man. The defendant, however, was his father's favorite and was spoiled. Financial difficulties forced the family to move about frequently, and defendant's father supported the family only sporadically.

The defense introduced proof to show that Hodges seemed normal until he was twelve years old. At that time, he began to associate with older boys, sniff glue and gasoline, be truant from school, and run away from home. He also engaged in sexual activities with his younger brother and attempted sexual activities with a female cousin. He became involved with the juvenile authorities and was confined to a juvenile facility in Chattanooga.

Through his mitigation proof, the defendant attempted to establish that a catalyst and major contributing cause of his delinquent and later criminal behavior was his rape and sexual abuse by a stranger when he was twelve years old. According to the defendant, he accepted a stranger's offer of a ride home when he was playing a short distance from his home on Fessler's Lane in Nashville. Rather than driving Hodges home, the stranger drove Hodges to his home and raped him. Fearing rejection by his homophobic father and driven by guilt, the defendant told no one of this incident until he was arrested in 1990.

Dr. Nurcombe testified that, while the defendant suffered from an antisocial personality disorder, low self-esteem, and substance (marijuana) abuse, the killing was motivated by a subconscious desire for revenge for the sexual abuse inflicted on him when he was twelve, coupled with Hodges' fear that his family might discover that he was engaged in homosexual prostitution since Brown had told

Hodge's sister-in-law shortly before the killing that he was a homosexual prostitute. The defense also introduced testimony that Brown dominated and manipulated the defendant.

In rebuttal the State called Dr. James Kyser, a forensic psychiatrist, and Dr. Leonard Morgan, a clinical psychologist. Both had examined the defendant and concluded that he suffered from an antisocial personality disorder. They described persons with this disorder as having "no conscience," being "self centered," being "notoriously dishonest and untruthful," and having "very little regard for the feelings of others and . . . willing to use any means to get what they want, no matter who it hurts." While acknowledging the complicated factors involved in antisocial personality disorders, the State's experts discounted the singular importance of the one incident of alleged sexual abuse in causing the defendant's actions. Dr. Morgan concluded that the defendant "was in complete control of his behavior" and not suffering from mental illness or emotional disturbance.

Based on the evidence presented, the jury determined that the State had proven the existence of three aggravating circumstances beyond a reasonable doubt: (1) "[t]he defendant was previously convicted of one or more felonies, other than the present charge whose statutory elements involve the use of violence to the person;" (2) "[t]he murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death;" and (3) "[t]he murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or attempting to commit,

or fleeing after committing a robbery." Tenn. Code Ann. § 39-13-204(I)(2); (I)(5) and (I)(7) (1991 Repl.). In addition, the jury found that the aggravating circumstances outweighed the mitigating circumstances[7] beyond a reasonable doubt and, as a result, sentenced the defendant to death by electrocution. The trial court entered a judgment in accordance with the jury's verdict and the Court of Criminal Appeals affirmed. After reviewing the record and considering the errors alleged by the defendant, we affirm the judgment of the trial court and Court of Criminal Appeals.

## I.

### JURY INSTRUCTIONS - MITIGATION

In this case, the defendant contends that he is entitled to a new sentencing hearing because the trial court's instructions on mitigating circumstances: (1) erroneously informed the jury that their duty to consider mitigating circumstances was discretionary and conditional upon their being proven; (2) failed to adequately state defendant's requested mitigating circumstances; and (3) inappropriately distinguished between statutory and nonstatutory mitigating circumstances in violation of Tenn. Code Ann. § 39-13-204(e). The State responds that any error in the trial court's charge was harmless.

---

[7]The jury was instructed to consider the following mitigating circumstances:
(1) History of childhood.
(2) Victim of child sex abuse.
(3) Mental illness or mental or emotional disturbance.
(4) Dominance by another person and/or immaturity.
(5) Drug abuse.
(6) Any other aspect of the defendant's background or character or the circumstances of the offense which you believe reduces the defendant's blame-worthiness.

We emphasize at the outset, however, that none of the alleged errors are of constitutional magnitude. This Court previously has held that jury instructions on specific non-statutory mitigating circumstances are not constitutionally mandated. State v. Odom, 928 S.w.2d 18, 30 (Tenn. 1996); State v. Hutchison, 899 S.W.2d 161, 173-74 (Tenn. 1994). Therefore, the right to such instructions, as well as the form and content of the instructions, derives solely from the statute. Second, it is not violative of the federal constitution to require a defendant to prove mitigating circumstances by a preponderance of the evidence. Walton v. Arizona, 497 U.S. 639, 649-51, 110 S.Ct. 3047, 3055-56, 111 L.Ed.2d 511 (1990). Thus, assuming that the trial court erred by instructing the jury to consider those "proven" mitigating circumstances, the error is statutory only. Therefore, the question for consideration in this case as to each allegation of error is whether the trial court's failure to strictly adhere to the statute constitutes error which affirmatively appears to have affected the verdict. Tenn. R. Crim. P. 52(a).

To resolve that question, we must scrutinize the statute and our recent decision in Odom which interpreted the statute. We begin our analysis with Tenn. Code Ann. § 39-13-204(e)(1) (1991 Repl. & 1996 Supp.), which, as amended in 1989, provides as follows:

> After closing arguments in the sentencing hearing, the trial judge shall include in the instructions for the jury to weigh and consider any of the statutory aggravating circumstances set forth in subsection (i) which may be raised by the evidence at either the guilt or sentencing hearing, or both. The trial judge shall also include in the instructions for the jury to weigh and consider any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing or both which shall include, but not be limited to, those circumstances set forth in subsection (j). No distinction shall be made

-10-

> between mitigating circumstances as set forth in subsection (j) and those otherwise raised by the evidence which are specifically requested by either the state or the defense to be instructed to the jury. These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations.

(Emphasis added.)

Recently, in Odom, supra, this Court interpreted that statute to require jury instructions on non-statutory mitigating circumstances raised by the evidence and proffered by a defendant as having mitigating value. In addition, we stated that instructions on nonstatutory mitigating circumstances must not be fact specific and imply to the jury that the judge had made a finding of fact. Instead, we stated that instructions on nonstatutory mitigating circumstances must be "drafted so that when they are considered by the jury, the statutory mitigating circumstances are indistinguishable from the non-statutory mitigating circumstances." Id. at 32. Finally, in Odom, we interpreted the "no distinction" portion of the statute as precluding the trial judge from revealing to the jury that a request was made and from identifying the party making the request. Id.

Generally, in determining whether instructions are erroneous, this Court must review the charge in its entirety and read it as a whole. State v. Stephenson, 878 S.W.2d 530, 555 (Tenn. 1994). A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law. State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); Graham v. State, 547 S.W.2d 531 (Tenn. 1977). The United States

-11-

Supreme Court has observed that in evaluating claims of error in jury instructions, courts must remember that

> [j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

Boyde v. California, 494 U.S. 370, 380-81, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990); see also State v. Van Tran, 864 S.W.2d 465, 479 (Tenn. 1993). Applying that standard to the instructions in this case, a majority of this Court has concluded that none of the assigned errors affirmatively appear to have affected the verdict.

## A. Erroneous Burden of Proof

At the conclusion of the sentencing hearing, Judge Kurtz charged the jury, in pertinent part, as follows:

* * *

> The evidence and arguments in this hearing have been completed, and it is my duty now to instruct you as to the law, the law applicable to this case as stated in these instructions; and it is your duty to carefully consider all of them.

> The order in which these instructions are given is no indication of their relative importance. You should not single out one or more of them to the exclusion of another or others, but should consider each one in light of and in harmony with the others.

* * *

> In arriving at the punishment, you, the jury, shall consider, as

-12-

heretofore indicated, any <u>proven</u> mitigating circumstances, which shall include the following:

Any mitigating factor which is <u>raised by the evidence</u> produced by either the prosecution or the defense at the sentencing hearing; that is, you shall consider any aspect of the Defendant's character or record or any aspect of the circumstances of the offense favorable to the Defendant, <u>which is supported by the evidence.</u>

In determining mitigating factors, you are to consider the above. In addition, <u>the defense has submitted</u> the following issues for your consideration. They are to be considered, if you believe they have been <u>proven</u> and are mitigating or favorable to the Defendant or reduce his blameworthiness.

(1) History of childhood;

(2) Victim of child sex abuse;

(3) Mental illness or mental or emotional disturbance;

(4) Dominance by another person and/or immaturity;

(5) Drug abuse;

(6) Any other aspect of the Defendant's background or character or the circumstances of the offense, which you believe reduces the Defendant's blameworthiness.

As to a determination of mitigating circumstances, you may deliberate as a -- as a body about mitigating circumstances; <u>but you are not required to reach a unanimous verdict as to their existence or weight, nor are you to gauge whether their existence is shown beyond a reasonable doubt.</u>

Instead, when you consider mitigating circumstances, each of you must decide for yourself whether mitigating circumstances may exist and, if so, how much weight each deserves. <u>If you conclude that any evidence supports a mitigating circumstance, then you should consider that mitigating circumstance to be established and then determine the weight to which it is entitled.</u>

In considering aggravating and mitigating circumstances, you must not weigh the two in a mechanical fashion. Do not merely compare the number of circumstances in aggravation to the number in mitigation, or arbitrarily assign different weights to be given the factors. Instead, you should personally determine the convincing force of each circumstance.

You may find that the State has proved multiple aggravating circumstances, and that only one mitigating circumstances -- circumstance exists, and still find that life is appropriate, due to the convincing force of the single mitigating circumstance.

(Emphasis added.)

The defendant first asserts that the instruction is erroneous because it charges the jury to consider only "proven" mitigating circumstances. While acknowledging that the trial court's use of the term "proven" was not appropriate under the statute, the State, nonetheless, argues that the error was harmless.

We agree with the defendant's contention that the trial court erred by including the term "proven" in the jury charge. The statute requires jurors to consider those statutory or nonstatutory mitigating circumstances which have been "raised by the evidence." Tenn. Code Ann. §39-13-204(e)(1) (1991 Repl. & Supp. 1996). The statute does not impose a burden of proof as to mitigating circumstances. Therefore, to comply precisely with the statute, the trial court should have only instructed the jury to consider those statutory and nonstatutory mitigating circumstances which had been "raised by the evidence."

Nevertheless, read in context and as a whole, it is clear that the jury charge given in this case fairly informed the jury of the legal issues and the applicable law. The erroneous term "proven" was clarified by the trial court's subsequent instructions to the jury advising it to consider as mitigating any circumstance "raised" or "supported" by the evidence. In addition, the trial court advised the jury

-14-

that "[i]f you conclude that <u>any</u> <u>evidence</u> supports a mitigating circumstance, then you should consider that mitigating circumstance to be established. . . ." Further clarification of the term  was provided when the trial court told the jury that as to mitigating circumstances, it was "not required to reach a unanimous verdict. . .nor are you to gauge whether their existence is shown beyond a reasonable doubt."

Though the term "proven" should not be used because the statute contains no burden of proof and because the term is potentially misleading, in this case, the trial court's further explanations eliminated any potential confusion, and the error does not affirmatively appear to have affected the verdict.  We do not agree with the defense contention that the error can not be harmless because the charge is contradictory.  Though we agree with the dissent that the trial court's use of the term "proven" was not appropriate, it was given contextual meaning by the subsequent explanatory instructions which fairly informed the jury to consider any mitigating circumstances "raised by the evidence."  Therefore, the error was harmless and this issue is without merit.

Relying upon the Tennessee Pattern Jury Instructions and certain general statutory provisions, the defense, during oral argument before this Court, asserted that the trial court should have instructed the jury that the State has the burden to <u>disprove</u> any mitigating circumstances beyond a reasonable doubt.  First of all, Tenn Code Ann.  § 39-11-201(a)(3) (1991 Repl.)[8] and § 39-11-203(d) (1991

---

[8]That statute provides as follows: "(a) No person may be convicted of an <u>offense</u> unless each of the following is proven beyond a reasonable doubt. (3) The negation of any defense to an <u>offense</u> defined in this title if admissible evidence is introduced supporting the defense." (Emphasis added.)

-15-

Repl.)[9] do not support the defendant's claim. These are general statutes which govern the prosecution of criminal offenses. They have no application in the context of a capital sentencing proceeding which is controlled by Tenn. Code. Ann. § 39-13-204 (1991 Repl). It is an elementary principle of statutory construction that a specific statute on a particular subject will prevail over a general statute. State v. Black, 897 S.W.2d 680, 683 (Tenn. 1995). There is no provision in the capital sentencing scheme to support the defendant's claim that the State must disprove mitigating circumstances beyond a reasonable doubt. Indeed, it is difficult to imagine how the State could meet such a burden. Jurors individually consider mitigating circumstances and need not unanimously agree to any certain one. Accepting the defendant's argument would impose upon the State the untenable task of disproving the existence of each mitigating circumstance to twelve different individuals. This duty has not been imposed by statute and we refuse to judicially impose it.

Moreover, the defendant's reliance upon §7.04(d) of the Tennessee Pattern Jury Instructions is misplaced. As we have previously stated, pattern jury instructions are not officially approved by this Court or by the General Assembly and should be used only after careful analysis. They are merely patterns or suggestions. While previously printed forms may be convenient, they must be revised or supplemented if necessary in order to fully and accurately conform to applicable law. State v. Martin, 702 S.W.2d 560, n. 4 (Tenn. 1985). To the

---

[9]That statute provides as follows: "(d) If the issue of the existence of a defense is submitted to the jury, the court shall instruct the jury that any reasonable doubt on the issue requires the defendant to be acquitted."

-16-

extent that §7.04(d)[10] purports to require that the jury be instructed that the State

must disprove mitigating circumstances, it does not conform to applicable law and

is hereby expressly disapproved. This issue is without merit.

## B. Specificity of Instructions

At an appropriate time in the sentencing hearing, the defendant submitted

the following proposed jury instructions with respect to nonstatutory mitigating

circumstances.

> 1. The defendant had a disturbed childhood due to the irregular nature of the relationship of his parents, the conflicts that existed between them, and the financial hardships experienced by the family.
>
> 2. The defendant's psychological and social development was severely impacted by the trauma of being abducted and homosexually raped at the age of 12, an experience which he was afraid to reveal to others for fear that he would be blamed and rejected;
>
> 3. The after effects of the trauma, in combination with a genetic predisposition to alcoholism, led to the defendant's becoming drug and alcohol-dependent during his adolescence;
>
> 4. The defendant's drug and alcohol dependency, in combination with the psychological impairments resulting from his disturbed childhood and preadolescent sexual abuse, contributed to the defendant's becoming truant from school and to his delinquent, and later criminal, behavior;
>
> 5. As a result of his disturbed childhood and preadolescent sexual abuse, the defendant developed a severe conflict regarding his sexual identity which he felt compelled to keep secret from his family;

---

[10]The pertinent portion of that pattern instruction provides as follows: "The defendant does not have the burden of proving a mitigating circumstance. If there is some evidence that a mitigating circumstance exists, then the burden of proof is upon the state to prove, beyond a reasonable doubt that the mitigating circumstance does not exist." 7 T.P.I.-Crim. § 7.04(d) (West 4th ed. 1995) (emphasis added).

-17-

6.  When the defendant's sexual conflicts were revealed to his family he suffered a mental and emotional disturbance.

7.  The intent to commit murder was formed while the defendant was under the influence of this mental and emotional disturbance.

8.  The defendant did not wish to kill the victim and was persuaded to commit the murder by his juvenile accomplice, Trina Brown, who was permitted to plead guilty and receive a sentence of incarceration in a juvenile correctional institution until she is twenty-one years of age;

9.  The defendant was an immature and emotionally dependent person at the time of the offense, and his judgment was impaired by alcohol and drugs; and

10.  The murder of the victim in this case added to the mental and emotional disturbance the defendant was experiencing and contributed to the commission of the homicide in Atlanta which has been listed as one of the statutory aggravating factors.

The trial court refused to give the instructions requested by the defense and instead, instructed the jury as to six general categories of nonstatutory mitigating circumstances, as follows (1) history of childhood; (2) victim of child sex abuse; (3) mental illness or mental or emotional disturbance; (4) dominance by another person and/or immaturity; (5) drug abuse; (6) any other aspect of the defendant's background or character or the circumstances of the offense, which you believe reduces the defendant's blameworthiness.  In this Court, the defendant claims that the trial court erred by refusing to give his requested instructions and he contends that the instructions given were erroneous because they lacked specificity and failed to convey the defendant's theories of mitigation to the jury.  The State responds that the trial court fully complied with this Court's decision in Odom, which was rendered after the trial of this case.  We agree.

In Odom, supra, the defendant claimed that the trial court erred by refusing to submit to the jury his requested fact specific instructions on nonstatutory mitigating circumstances. We rejected that claim, concluding that the fact specific instructions advocated by the defense implied to the jury that the judge had made findings of fact in contravention of Article VI, § 9 of the Tennessee Constitution. Id., 928 S.W.2d at 32. We held that specificity in the charge on nonstatutory mitigating circumstances is inappropriate and cautioned that instructions must be drafted "so that when they are considered by the jury, the statutory mitigating circumstances are indistinguishable from the non-statutory mitigating circumstances." Id. Though not explicitly stated in Odom, the clear implication is that instructions on nonstatutory mitigating circumstances must be phrased in general categories similar to the statutory mitigating circumstances.[11] Finally, we emphasized in Odom, that under the statute, a trial court has no duty, absent a timely and proper request from the defense, to include instructions on nonstatutory mitigating circumstances. Id., 928 S.W.2d at 31. However, when the defense proffers a requested instruction which is overly specific, it is incumbent

_____

[11]The statutory mitigating circumstances are codified at Tenn. Code Ann. §39-13-204(j)(1)-(9) (1991 Repl. & 1996 Supp.), which provides as follows:

(1) The defendant has no significant history of prior criminal activity;

(2) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;

(3) The victim was a participant in the defendant's conduct or consented to the act;

(4) The murder was committed under circumstances which the defendant reasonably believed to provide a moral justification for the defendant's conduct.

(5) The defendant was an accomplice in the murder committed by another person and the defendant's participation was relatively minor;

(6) The defendant acted under extreme duress or under the substantial domination of another person;

(7) The youth or advanced age of the defendant at the time of the crime;

(8) The capacity of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant' conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected the defendant's judgment; and

(9) Any other mitigating factor which is raised by the evidence produced by either the prosecution or defense at either the guilt or sentencing hearing.

upon the trial court to revise and generalize the instruction to conform to the evidence and the law. Id.

Applying those principles to the facts in this case, it is clear that the trial court appropriately denied the defendant's requested instruction. A fair reading of the defendant's requested instructions leaves the distinct impression that the trial judge has made findings of fact which is impermissible under the Tennessee Constitution. Moreover, by their specificity, the requested instructions on nonstatutory mitigating circumstances were clearly distinguishable from the statutory mitigating circumstances which is not permissible under the statute and our decision in Odom. Therefore, the trial court correctly refused to give the defendant's proffered instructions.

The defense claims also that the revised instructions given by the trial court, by their lack of specificity, defeated the purpose of the instructions and did not convey to the jury a fair picture of the mitigation proof. We do not agree. As was previously recognized, unlike lawyers, jurors do not parse jury instructions in an attempt to find subtle shades of meaning. Jurors interpret the instructions in a commonsense manner and in light of the evidence presented at the trial. Boyde, 494 U.S. at 380-81, 110 S.Ct. at 1198. The defense assertion ignores the reality that these jurors had heard specific evidence during the sentencing hearing about the defendant's childhood, his immaturity, alleged sexual abuse, drug abuse, mental illness and emotional disturbance, as well as the dominance by Trina Brown. By their breadth, the instructions on nonstatutory mitigating circumstances encompassed all the evidence presented by the defense at the sentencing

-20-

hearing. Under this Court's decision in <u>Odom</u>, trial courts have a duty to modify proffered instructions to remove factual specificity. The trial court in this case fulfilled that responsibility long before the <u>Odom</u> decision was rendered. For that he deserves commendation, and the defendant's claim of error is without merit.

### C. Distinction Between Statutory - Nonstatutory Mitigation

Finally, the defendant claims that the trial court improperly distinguished between statutory and nonstatutory mitigating circumstances in violation of the statute and our decision in <u>Odom</u>. The only distinction error alleged is the trial court's preface of the charge on non-statutory mitigating circumstances with the phrase, "the defense has submitted the following issues for your consideration." Without question, the phrase was improper under this Court's <u>subsequent</u> interpretation of the statute in <u>Odom</u>, <u>supra</u>, in which we stated that a "trial court is prohibited from revealing to the jury that a request was made and from identifying the parties making the request. <u>Id.</u>, 928 S.W.2d at 32. However, in this case, the error does not affirmatively appear to have affected the verdict in light of the trial court's prior instruction cautioning the jury that

> [t]he order in which these instructions are given is no indication of their relative importance. <u>You should not single out one or more of them to the exclusion of another or others, but should consider each one in light of and in harmony with the others.</u>

(Emphasis added.) Therefore, the defendant's claim that this error was prejudicial requiring a new sentencing hearing is without merit.

## II.

-21-

## SUFFICIENCY OF EVIDENCE - AGGRAVATING CIRCUMSTANCES

Pursuant to Tenn. Code Ann. § 39-13-206(c)(1)(B) (1991 Repl.), we have examined the evidence to determine whether it is sufficient to support the three aggravating circumstances found by the jury. We conclude that the evidence is clearly sufficient to support these findings.

The State introduced proof to establish that the defendant had been previously convicted of armed robbery, attempted kidnaping and robbery in Hamilton County in 1984. In addition, the State established that the defendant had been convicted of murder in Fulton County, Georgia in July of 1990. This evidence is clearly sufficient to support the jury's finding that the "[t]he defendant was previously convicted of one or more felonies, other than the present charge whose statutory elements involve the use of violence to the person." Tenn. Code Ann. § 39-13-204(I)(2) (1991 Repl.). Moreover, we do not agree with the defendant's claim that the Georgia conviction for murder should not have been admitted to establish this aggravating circumstance because the killing in that case occurred after the offense in this case. We have previously held on numerous occasions that so long as a defendant is <u>convicted</u> of a violent felony <u>prior</u> to the sentencing hearing at which the previous conviction is introduced, this aggravating circumstance is applicable. <u>State v. Nichols</u>, 877 S.W.2d 722, 736 (Tenn. 1994); <u>State v. Caldwell</u>, 671 S.W.2d 459, 464-65 (Tenn. 1984). We decline the defendant's invitation to overrule this precedent; therefore, this issue is without merit.

Next, the defendant contends that the evidence presented by the State was

insufficient, as a matter of law, to support the jury's finding that "[t]he murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." We disagree. The trial court correctly instructed the jury as to the definitions of the terms "heinous," "atrocious," and "cruel" in accordance with this Court's decision in State v. Williams, 690 S.W.2d 517, 529 (Tenn. 1985); see also Odom, 928 S.W.2d at 26. Also in accordance with Williams, the trial court instructed the jury that "torture" means "the infliction of severe physical or mental pain upon the victim while he or she remains alive or conscious." Id. The proof introduced by the State during the trial clearly established torture.[12]

Hodges handcuffed the victim, bound his feet with duct tape and left the victim lying on the bed with a pillow over his head. No doubt, the victim suffered considerable mental pain as the defendant, along with Trina Brown, ransacked his home, looking for valuable property and money. The helpless victim's mental pain, no doubt, increased when the defendant and Brown, took a break, and over a coke, discussed whether or not they should kill the victim. The evidence surrounding the murder itself shows that the victim pleaded with Hodges for his life. Dr. Harlan testified that the killing would have taken between three to five minutes to accomplish and that victim would have been conscious during most of this period. Brown testified that she heard the victim moaning and making a

---

[12]The State in this case specifically relied only upon the torture aspect of the aggravating circumstance. Prior to the sentencing hearing in response to a defense motion to strike the aggravating circumstance, General Thurman stated as follows: "I'm not saying it was physical damage beyond that necessary to cause death. The State is relying, as I said in my brief, on the torture aspect." Transcript Volume 12 of 18 at page 1632. Furthermore, the State argued only the torture prong of the aggravating circumstance at the conclusion of the sentencing hearing.

choking sound. The facts and circumstances surrounding this murder, including the strangulation, are clearly sufficient to establish torture as that term has been defined in State v. Williams, supra, and to support the jury's finding that this murder was heinous, atrocious, or cruel, in that it involved torture or serious physical abuse beyond that necessary to produce death. Tenn. Code Ann. § 39-13-204 (I)(5) (1991 Repl.).

Finally, the jury's finding that "[t]he murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or attempting to commit, or fleeing after committing a robbery", Tenn. Code Ann. § 39-13-204 (I)(7) (1991 Repl.), is clearly supported by the evidence. The defendant entered a guilty plea to one count of especially aggravated robbery. In addition, the State introduced proof during the sentencing hearing to establish that the defendant had several items of personal property belonging to the victim in his possession at the time he was arrested. The evidence is clearly sufficient to support this aggravating circumstance.

## III.

### PROPORTIONALITY REVIEW

In accordance with the mandate of Tenn. Code Ann. § 39-13-206(c)(1)(1991 Repl.), we have considered the entire record in this cause and find that the sentence of death was not imposed in any arbitrary fashion; that the evidence supports, as previously discussed, the jury's findings of the statutory aggravating circumstances; and the jury's finding that the aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt.

Tenn. Code Ann. § 39-13-206(c)(1)(A)-(C)(1991 Repl.). Finally, comparative proportionality review convinces us that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases considering the nature of the crime and the defendant. Tenn. Code Ann. § 39-13-206(c)(1)(D) (1991 Repl.).

Our 1977 statute created a comparative proportionality review to serve as an additional safeguard against arbitrary or capricious sentencing. Such review of death cases insures rationality and consistency in the imposition of the death penalty. We have studied, compared, and analyzed cases and conducted a meaningful proportionality review as outlined in State v. Barber, 753 S.W.2d 659, 663-68 (Tenn. 1988). We have reviewed Rule 12 reports from trial judges submitted over the past eighteen years in all criminal trials for first degree murder in which life imprisonment or a sentence of death has been imposed. We have made an independent, conscientious and thorough review of this case, as we have in every other capital case that has come before this Court. As a result of that review, we are of the opinion that the calculated and premeditated killing of this victim warrants imposition of the death penalty. The defendant rendered the victim helpless by binding his feet and hands and then proceeded to ransack the victim's home, while the terrified victim pondered his own fate. The defendant ignored the victim's pleas for mercy and proceeded to strangle the victim to death. The victim remained alive and conscious for most of the three to five minutes required for the defendant to accomplish this task. This murder places the defendant Hodges into the class of defendants deserving capital punishment and is not disproportionate to the sentences imposed in similar cases. See State v.

-25-

<u>Brimmer</u>, 876 S.W.2d 75 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54 (Tenn. 1992); <u>State v. Caughron</u>, 855 S.W.2d 526 (Tenn. 1993); <u>State v. West</u>, 767 S.W.2d 387 (Tenn. 1989); <u>State v. Thompson</u>, 768 S.W.2d 239 (Tenn. 1989); <u>State v. Poe</u>, 755 S.W.2d 41 (Tenn. 1988); <u>State v. House</u>, 743 S.W.2d 141 (Tenn. 1987).

## **CONCLUSION**

We have considered the defendant's assignments of error and determined that none affirmatively appear to have affected the sentence imposed. With respect to issues not specifically addressed herein, we affirm the decision of the Court of Criminal Appeals, authored by Judge Joe B. Jones and joined in by Judge Gary Wade. The defendant's sentence of death by electrocution is affirmed. The sentence of death will be carried out as provided by law on the 28 day of July, 1997, unless otherwise ordered by this Court, or other proper authorities. Costs of this appeal are adjudged against the defendant.

_____
Frank F. Drowota, III
Justice

**Concur:**

Anderson, Holder, JJ.

Birch, C. J., - separate dissenting opinion.
Reid, J. - separate dissenting opinion.