# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. TARIK THOMPSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-00936    Paula Skahan, Judge**

_____

**No. W2011-01277-CCA-R3-CD  - Filed July 25, 2012**

_____

A Shelby County jury convicted the Defendant, Tarik Thompson, of two counts of unlawful possession of dihydrocodeinone, a schedule III drug.  The trial court merged the offenses, assessed a two thousand dollar fine, and sentenced the Defendant to eighteen months in the workhouse as a range one offender.  On appeal, the Defendant contends: (1) the evidence is insufficient to sustain the Defendant's conviction for one of the two counts of unlawful possession of dihydrocodeinone; and (2) the trial court committed plain error by failing to instruct the jury on the valid prescription exception to the offense of simple possession of dihydrocodeinone.  After a thorough review of the record and relevant authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Robert Brooks and Handel R. Durham, Jr., Memphis, Tennessee, for the appellant, Tarik Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Amy P. Weirich, District Attorney General, and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant's possession of a controlled substance,

dihydrocodeinone. A Shelby County grand jury indicted the Defendant for possession of dihydrocodeinone with intent to sell, possession of dihydrocodeinone with intent to deliver, and possession of marijuana. At the Defendant's trial on these charges, the parties presented the following evidence: Sergeant Mike Lewis, a special agent with the West Tennessee Drug Task Force, testified that, on September 14, 2009, he executed a search warrant at 3123 Greenbranch Drive in Memphis based on information from a confidential informant that a person named "Mike" stored and sold illegal narcotics, specifically liquid hydrocodone and marijuana, from that residence. According to Sergeant Lewis, the confidential informant had been inside the residence and observed two large resealable plastic bags that contained Lortab pills and Oxycontin pills. The confidential informant described "Mike" as a "black male in his twenties" who drove a Chevy Silverado truck. Sergeant Lewis stated that, in preparing to seek a search warrant, he conducted surveillance of the residence for a couple of days. Sergeant Lewis saw the Defendant come and go from the house "[a]t least two or three" times. Sergeant Lewis stated that the Defendant "matched the description" provided to him from the confidential informant, which led Sergeant Lewis to believe that the Defendant lived at the house.

Sergeant Lewis testified that, when he arrived to execute the search warrant, the Defendant, another male, and a female were inside the residence. Sergeant Lewis stated that, during the search, he found 6.4 grams of marijuana on a coffee table in a front room of the house, .84 grams of marijuana on the floor of a bedroom and a bottle of liquid dihydrocodeinone on the nightstand in the master bedroom. Sergeant Lewis described the bottle as a "standard medicine bottle, cough syrup bottle" with the label torn off. The sergeant stated that he found an additional cough syrup bottle on the nightstand, but he did not collect it for evidence because "[i]t had [the Defendant's] name on it and it appeared to be a legitimate prescription." Sergeant Lewis said that the prescription label said it contained hydrocodone. In another bedroom of the residence, Sergeant Lewis found an empty bottle of dihydrocodeinone, specifically labeled "Tussinex" that bore the name "Cassandra Biggert." In addition to the marijuana and bottles of dihydrocodeinone, Sergeant Lewis found a bag of currency, which he collected. The sergeant testified that there is "[a] very big" illicit drug market for prescription medications, including cough syrup. He stated that cough syrup sells for approximately forty dollars an ounce "on the street."

Sergeant Lewis testified that he believed the Defendant lived at the residence because his clothes were there, along with a prescription bottle of cough syrup bearing his name, and, every time the sergeant drove by the house, he saw the Defendant there. Therefore, upon finding the narcotics, the sergeant read the Defendant his Miranda rights. The Defendant replied that he understood his rights, and he admitted that the currency and narcotics belonged to him. Regarding the money, the Defendant told Sergeant Lewis that he had been unemployed for several months, but that he received the money from "shooting dice."

On cross-examination, Sergeant Lewis acknowledged that he read the Defendant his rights again after the Defendant was transported to the police station. Sergeant Lewis testified that, at that time, the Defendant signed a form, indicating that he refused to talk any further without the presence of an attorney. Sergeant Lewis also admitted that he did not find two large bags of marijuana nor a box with a large number of Oxycodone pills, as the confidential informant had said he had observed in the residence. Sergeant Lewis stated that he did not find a person that went by the name "Mike" in the residence. However, the sergeant said that he saw the Defendant, on several occasions, at the residence and also saw him driving a Chevy Silverado truck, which was consistent with the confidential informant's description.

Joseph Rhea, an agent with the West Tennessee Drug Task Force, testified that he assisted in executing the search warrant at 3123 Greenbranch Drive. He stated that he found a bath robe with an undetermined amount of currency stuffed in a pocket in the front room of the residence and a Gucci bag with an undetermined amount of currency in the master bedroom. He stated that, in the master bedroom, he observed bottles and pills on the floor by the nightstand, a small bag containing marijuana on the floor, and a bottle of cough syrup on the nightstand. Agent Rhea said that he also observed a larger bag of marijuana on the kitchen table.

Agent Rhea testified that he conducted a pat down of the Defendant, another male, and a female. He stated that the female had a large amount of cash in a pocket of her pants. The woman informed Agent Rhea that the pants belonged to the Defendant. Detective Rhea testified that he overheard the Defendant say that he won the money in a craps game.

David Lytal, an agent with the West Tennessee Drug Task Force, also assisted with the execution of the search warrant at 3123 Greenbranch Drive. He testified that when he arrived, there were two males, one being the Defendant and the other Greg Jones, and one female at the residence. The Defendant told Agent Lytal that the female was his girlfriend, and the house was his residence. Agent Lytal said that, on the nightstand in the master bedroom, he found the Defendant's billfold with his driver's license and a bottle of dihydrocodeinone. In addition, the agent testified that he found a small bag of marijuana on the floor of the master bedroom. While searching other areas of the residence, Agent Lytal found some clothing and personal mail for Jones. Agent Lytal testified that he found an empty bottle of Tussinex, liquid hydrocodone, prescribed to Cassandra Biggert and currency in the pocket of a bath robe. He stated that no one named Cassandra Biggert was found in the residence.

Mark Chism, an agent with the West Tennessee Violent Crime/Drug Task Force, testified that he checked the following items into evidence for this case: 157.23 grams total

gross weight of liquid hydrocodone, one empty bottle, 6.4 grams total gross weight of marijuana, and .84 grams total gross weight of marijuana.

Melanie Johnson, a special agent forensic scientist with the TBI, testified that she examined and analyzed the evidence in this case as well as generated a report of her findings. She determined that the liquid found at the residence contained hydrocodone, a Schedule III controlled substance. Special Agent Johnson stated that dihydrocodeinone contains both hydrocodone and acetaminophen, a normal analgesic. She also determined that the plant substance was marijuana, a Schedule VI controlled substance.

Henry Bridgeforth, an investigator with the public defender's office, testified that, after an interview with the Defendant, he contacted a pharmacist at a CVS pharmacy in California in order to determine if the Defendant had a prescription for Tussinex, cough syrup with codeine. He gave the pharmacy the number from the prescription label, the Defendant's date of birth, and the Defendant's full name. Investigator Bridgeforth also faxed the pharmacy a HIPPA release signed by the Defendant and requested the Defendant's prescription history from January 8, 2011 to January 8, 2012. Investigator Bridgeforth testified that he received one prescription from the pharmacy, but it did not match his request. He stated that the information from the pharmacy indicated that Eugene E. Christiansen, Jr., M.D., prescribed Tussinex to the Defendant. The investigator admitted on cross-examination that the bottom of the prescription form had a line for the prescribing doctor to write the number of refills, but "NR" was circled, which Investigator Bridgeforth agreed could mean no refills. The investigator also acknowledged that he did not follow up with the doctor regarding the prescriptions, his request, or the doctor's medical records.

Based upon this evidence, the jury convicted the Defendant of the lesser-included offense of unlawful possession of a controlled substance, dihydrocodeinone, on the first two counts of the indictment. A mistrial, however, was entered on count three of the indictment, which charged the Defendant with possession of marijuana. After a hearing, the trial court merged the two convictions and sentenced the Defendant to eighteen months in the workhouse as a range one offender. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the following: (1) the evidence is insufficient to sustain the Defendant's conviction for one of the two counts of unlawful possession of dihydrocodeinone; and (2) the trial court committed plain error by failing to instruct the jury on the valid prescription exception to the offense of simple possession of dihydrocodeinone.

4

**A. Sufficiency of the Evidence**

The Defendant contends that the evidence is insufficient to sustain his conviction on one of the two counts of unlawful possession of a controlled substance, dihydrocodeinone, because the conviction was "based on uncontested evidence of an empty bottle." The State counters that the evidence is sufficient to sustain both of the Defendant's convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury

5

> see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

As relevant to this case, unlawful possession of a controlled substance is defined as "knowingly possess[ing] or casually exchang[ing] a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." T.C.A. § 39-17-418(a) (2010). If a person has two or more prior convictions under this section, as does the Defendant, a violation is a Class E felony. T.C.A. § 39-17-418(e) (2010). It is well settled that "'possession' may be either actual or constructive" and may be proven by circumstantial evidence. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citing *State v. Patterson*, 966 S.W.2d 435, 444-45 (Tenn. Crim. App. 1997); *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995)); *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Constructive possession requires proof that a person had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. *Shaw*, 37 S.W.3d at 903 (citing *Patterson*, 966 S.W.2d at 444 (Tenn. Crim. App. 1997)). In essence, "constructive possession is the ability to reduce an object to actual possession." *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001) (citations omitted).

In the present case, the Defendant argues that one of his convictions is based on his possession of an empty bottle. The evidence presented at trial, however, proved that both of the Defendant's convictions were based on his possession of dihydrocodeinone found in the residence. Officers from the West Tennessee Drug Task Force received information from a confidential informant, which described a man who matched the Defendant's description, that narcotics were located at and being sold from 3123 Greenbranch Drive. Based on that information, officers executed a search warrant at the residence. When officers arrived, they found the Defendant at the house, and he admitted that the house was his residence.

6

Additionally, officers found the Defendant's wallet, driver's license, and his personal belongings at the residence. Officers found two bottles of liquid dihydrocodeinone in the master bedroom. One bottle had the Defendant's personal information on the label and appeared to be a legitimate prescription. The label on the other bottle had been removed. Officers then found an empty bottle in another bedroom that had Cassandra Biggert's personal information on the label and appeared to be a prescription for Tussinex. Cassandra Biggert was not present at the residence when officers executed the search, and they found no evidence that she lived at the house. After Sergeant Lewis read the Defendant his rights, the Defendant admitted that all of the narcotics found in the residence belonged to him

As stated above, the Defendant's constructive possession of the liquid dihydrocodeinone, which requires proof that the Defendant had the power and intention at a given time to exercise dominion and control over the drugs, is sufficient to sustain the convictions. *See Shaw*, 37 S.W.3d at 903. As proven in this case, the Defendant admitted that he lived at the residence and that the narcotics belonged to him; therefore, the Defendant was in a position in which he could exercise dominion and control over the drugs found in the various rooms of the residence. The jury heard and weighed the testimony of the witnesses and convicted the Defendant of possession of dihydrocodeinone. Based on the evidence presented, we will not disturb the jury's finding on appeal. The evidence is sufficient to support the Defendant's convictions, and he is not entitled to relief on this issue.

## B. Plain Error

The Defendant argues that the trial court erred by failing to instruct the jury on the valid prescription exception to the offense of possession of dihydrocodeinone. The State counters that the Defendant waived the issue because he failed to object to the jury instructions given by the trial court, failed to request a special jury instruction, and failed to raise the issue in his motion for new trial. In the alternative, the State contends that the Defendant failed to show that consideration of the error is necessary to do substantial justice. We agree with the State on its alternative argument.

In Tennessee, "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). Further, Rule 33(b) of the Tennessee Rules of Criminal Procedure provides:

A motion for a new trial shall be in writing or, if made orally in open court, be

7

reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial.

This Court has previously stated that a defendant's failure to reduce an oral amendment to writing within thirty days of the entry of the sentencing order waives the issue. *See State v. Ronald Lee Stewart,* No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, at *4 (Tenn. Crim. App., at Nashville, May 21, 2010); *State v. Mark C. Noles*, No. M2006-01534-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App., at Nashville, Nov. 6, 2007); *State v. Ronnie Watson*, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at *1-2 (Tenn. Crim. App., at Jackson, Sept. 16, 2002); *State v. Christopher D. Lanier*, No. W2001-00379-CCA-R3-CD, 2002 WL 1482712, at *4 (Tenn. Crim. App., at Jackson, Feb. 1, 2002). This Court may, however, consider errors affecting the substantial rights of the defendant if review is necessary to do substantial justice. Because, according to Tennessee Rule of Appellate Procedure 13(b), "[r]eview generally will extend only to those issues presented for review," we must review the issue presented by the Defendant herein pursuant to Tennessee Rule of Appellate Procedure 36(b), which states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." We refer to this discretionary consideration of waived issues as "plain error" review. *See Grindstaff v. State*, 297 S.W.3d 208, 219 n. 12 (Tenn. 2009). A court will grant relief for plain error pursuant to Rule 36(b) only when: "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake." *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id.* The party claiming plain error has the burden of persuading the appellate court. *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008).

In the present case, the State correctly points out that the Defendant did not include the jury instruction issue in his written motion for new trial. The record reflects, however, that the Defendant presented this issue during the hearing on the motion for new trial, and the State did not object. The trial court allowed the Defendant to proceed on the issue; although, it ultimately denied the Defendant's motion for new trial, stating within its ruling that it believed the jury understood the charges and decided not to convict the Defendant of the more serious crime of possession with intent to sell. We further recognize that the Defendant did not reduce its argument on the issue to writing within thirty days after the

motion for new trial, as required by Tennessee Rule of Criminal Procedure 33(b). We will, however, review the argument under plain error review, pursuant to Tennessee Rule of Appellate Procedure 36(b).

Under Tennessee law, a trial court has a duty to provide "a complete charge of the law applicable to the facts of the case." *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)); *see also* Tenn. R. Crim. P. 30(d)(2). A charge "should not contain inaccurate or inapplicable statements of legal principles that might tend to confuse the jury." *State v. Hatcher*, 310 S.W.3d 788, 812 (Tenn. 2010) (citations omitted). Tennessee law, however, does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

In this case, the record reflects that the trial court instructed the jury as follows with respect to the offense of possession of a controlled substance, dihydrocodeinone:

Any person who commits the offense of unlawful possession is guilty of a crime.

For you to find the [D]efendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

(1)     that the [D]efendant knowingly possessed a controlled substance; and

(2)     that the substance was dihydrocodeinone, a controlled substance.

Dihydrocodeinone is a schedule three controlled substance.

Tennessee Code Annotated section 39-17-418(a) defines unlawful possession of a

controlled substance as "an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." According to the code section, the "valid prescription" language appears to establish an "exception" to the stated offense. *See* T.C.A. § 39-11-202 (2010) ("An exception to an offense in this title is so labeled by the phrase: 'It is an exception to the application of . . .,' or words of similar import."). Tennessee law, however, establishes that "[u]nless the statute defining an offense states to the contrary, the [S]tate need not negate the existence of an exception in the charge alleging commission of the offense." T.C.A. § 39-11-202(b)(1) (2010).

Contrary to the Defendant's position, the instruction was a proper statement of the law. The Defendant never requested a special jury instruction on the offense and never objected to the trial court's instruction to the jury. The trial court instructed the jury on the charged offense of possession of dihydrocodeinone with intent to sell or deliver, and it instructed the jury on the lesser-included offense of simple possession of dihydrocodeinone. The jury instruction at issue, on possession of dihydrocodeinone, followed the pattern jury instruction on that offense as provided in the Tennessee Pattern Jury Instructions. *See* T.P.I. Crim. 31.05. We conclude that the trial court's jury instruction on the offense of possession of dihydrocodeinone did not confuse or mislead the jury. *See Hodges*, 944 S.W.2d at 352. The Defendant has failed to show that the trial court breached "a clear and unequivocal rule of law," and the Defendant has not shown that "substantial justice" is at stake. *See Hatcher*, 310 S.W.3d at 808. Therefore, we are unable to conclude that substantial justice requires us to grant plain error relief on this issue. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

10