IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2003

## STATE OF TENNESSEE v. PATRICK DESHUN PARIS, ALIAS PATRICK DESHON PARRIS

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 224116, 224232     Rebecca J. Stern, Judge**

_____

**No. E2002-01514-CCA-R3-CD**
**July 29, 2003**
_____

A jury found the defendant guilty of first degree premeditated murder, first degree felony murder, and especially aggravated robbery.  The two first degree murder convictions merged, and the jury sentenced the defendant to life without the possibility of parole. The trial court sentenced the defendant to twenty-four years for especially aggravated robbery, to run concurrently with his previous sentence for abuse of a corpse.  The defendant argues that the trial court erred in failing to suppress an incriminating statement he made on December 2, 1998, that the jury charge regarding criminal responsibility was in error and that his sentencing was erroneous.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Jeffrey Schaarschmidt, Chattanooga, Tennessee, for the appellant, Patrick Deshun Paris, Alias Patrick Deshon Parris.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and Lila Statom and Dean C. Ferraro, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Facts

On August 24, 1998, the dead body of Michael Lawrence was found in a dumpster in a Cleveland, Tennessee apartment complex.  Fingerprints found at the scene led police to the defendant, Patrick Deshun Paris.  On August 25, 1998, after being advised of his Miranda rights, the

defendant gave a statement to Chattanooga Detective Michael Mathis, denying any involvement in the shooting or disposal of the victim. During the same interview, the defendant also said that a Jamaican drug dealer from Chattanooga killed the victim in his sleep. Later in the interview, the defendant said the same drug dealer killed the victim in his car. Subsequently, the defendant was charged with the killing.

On September 19, 1998, the defendant met with the District Attorney General in order to give information about other crimes in return for the State not seeking the death penalty in the instant case. This meeting lasted about eight hours, with defense counsel present for only the first three hours. Ultimately, the information gathered from the defendant at this meeting was suppressed by the trial court.[1]

On November 18, 1998, the defendant was indicted on one count of abuse of a corpse, one count of especially aggravated robbery, one count of premeditated murder, and one count of felony murder. Also that day, while still in custody, the defendant left a message for Detective Mathis that the defendant had information about the death of a state trooper and that he wanted to talk. On December 2, 1998, Detective Mathis had the defendant brought to the police department to discuss the matter. The defendant's attorney was not present during this interview and what happened at this point is controverted.

It is the State's position that the defendant initiated the conversation, and during the conversation, without the police specifically questioning him about it, the defendant said he was the triggerman in the shooting of Michael Lawrence. The defendant denies that he initiated the conversation and denies that he admitted to being the triggerman in the Lawrence murder. Additionally, he claims that he immediately discontinued all discussions when Detective Mathis questioned him about the matter and that he requested his attorney. The admission of this incriminatory statement is, *inter alia*, at issue on appeal.

Prior to the jury trial, the defendant pled guilty to abuse of a corpse. Following the jury trial on May 19, 2001, the defendant was convicted of first degree premeditated murder, first degree felony murder, and especially aggravated robbery. The jury then sentenced the defendant to life without the possibility of parole for the two murder convictions, which were merged. On August 20, 2001, the defendant was sentenced as a Range I, violent offender to twenty-four years for the especially aggravated robbery, to run concurrently with his sentence for abuse of a corpse.

The defendant's motion for a new trial was denied on June 10, 2002.

On appeal, the defendant raises three issues:
(1) Whether the trial court properly denied the defendant's motion to suppress the December 2, 1998 statement;

---

[1] The September 19, 1998 statement is not the subject of this appeal.

(2) Whether the trial court properly charged the jury concerning criminal responsibility; and

(3) Whether the use of the defendant's prior conviction as an aggravating factor during sentencing was in error.

## MOTION TO SUPPRESS

After a hearing on May 16, 2001, the defendant's motion to suppress the December 2, 1998 statement was denied. In doing so, the trial court made the following findings:

(1) The defendant initiated the conversation;

(2) The defendant knew of his rights to counsel;

(3) Detective Mathis did not interrogate or question the defendant;

(4) The conversation that took place was not an in-custody interrogation; and

(5) The statement was a voluntary one initiated by the defendant.

### Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

In Miranda v. Arizona, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. Thus, because Miranda is only implicated when the defendant is questioned while in the coercive environment associated with being in police custody, our initial inquiry is whether defendant was subjected to "custodial interrogation."

Recently, our Supreme Court developed the test in Tennessee for determining whether an individual is "in custody" as contemplated by Miranda. State v. Anderson, 937 S.W.2d 851 (Tenn. 1996). We must determine whether, "under the totality of the circumstances, a reasonable person

in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." Id. at 855. Factors relevant to that determination include:

> [T]he time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Id.

The burden is clearly on the defendant to establish that the evidence in the record preponderates against the findings of fact made by the trial court.

There were only two witnesses at the motion to suppress hearing: Detective Mathis and the defendant. After a careful review of the record and giving the strongest legitimate view of the evidence and inferences to be made from that in favor of the State, we conclude that the defendant has failed to meet his burden.

Detective Mathis testified that the defendant initiated the contact with police that led to the incriminating statement. Mathis testified that after a conversation with the defendant concerning an unrelated case, the defendant told him that "he in fact had pulled the trigger that killed Michael Lawrence." Mathis testified that he was not questioning the defendant about the instant case nor did he question him about it after the incriminating statement.

The defendant testified that he did not initiate the conversation and that he asked to have his attorney present at the meeting.

Based on our standard of review, it simply was not error for the trial court to credit the testimony of Detective Mathis and discredit the testimony of the defendant. Crediting the testimony of Detective Mathis leads to the conclusion that this was not a custodial interrogation concerning the instant case and that, indeed, it was the defendant who initiated the contact. Having found as such, it was not error to fail to suppress the incriminating statement. The defendant has failed to demonstrate that the record preponderates against the trial court's findings. Accordingly we affirm this judgment of the trial court.

# JURY CHARGE

The defendant contends that the part of the jury charge concerning the criminal responsibility for the conduct of another, as it related to the first degree murder charge, was erroneously given. The relevant charge was as follows:

<u>Criminal Responsibility for Conduct of Another</u>: A defendant is criminally responsible as a party to a criminal offense if the offense was committed by a defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Each party to the offense may be charged with the commission of the offense.

A defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

Before you find a defendant guilty of being criminally responsible for said offense committed by the conduct of another, you must find that all the essential elements of said offense have been proven by the State beyond a reasonable doubt.

Tennessee Code Annotated section 39-11-402 states:

A person is criminally responsible for an offense committed by the conduct of another if:

(1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

This court, in determining whether a jury charge was proper, must review the entire jury charge and can find error only if, when read as a whole, the charge fails to submit the legal issues or misleads the jury as to the applicable law. <u>State v. Phipps</u>, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). In addition, such a misleading charge would be considered prejudicial error. <u>State v. Hodges</u>, 944 S.W.2d 346, 352 (Tenn. 1997).

The section of the jury charge that the defendant complains about deals only with the aspect of a defendant's criminal responsibility for the acts of another. We agree with the defendant that the inclusion of such a charge could be misleading and therefore prejudicial if nowhere in the theory of the case did the State have a theory of criminal responsibility for another. However, this is not the

case, and therefore the charge, which accurately reflects Tennessee Code Annotated section 39-11-402, is not an improper one.

A review of the record reveals that when the defendant objected to this section of the jury charge, the court responded, "I think there has been proof that at least they worked together to dispose of the body. Therefore, I think the inference can be drawn that should Mr. Brooks have done this murder that [the defendant] could be also responsible."

Indeed, the State set out in its opening statement that Brooks and the defendant knew each other and worked together in the disposal of the victim's body. During the direct examination of Brooks, he testified that he did not have anything to do with the shooting but did help the defendant dispose of the victim's body because he was scared of the defendant (and therefore did what the defendant told him to do). Additionally, he testified to helping clean up the crime scene. Moreover, during cross-examination, the following colloquy occurred between the court and the defense attorney:

THE COURT: What I'm saying is, how could – you are saying that Marco Brooks' motivation for killing– your theory is Marco Brooks killed him and the reason why is because he set up his uncle?"

DEFENSE ATTORNEY: Yes.

Furthermore, the defendant argued in his closing argument that Marco Brooks was the killer. He wants to argue an alternative theory to the killing, that it was not the defendant, but Marco Brooks. Then he wants to argue that the jury cannot be charged that if Brooks was the killer and the defendant merely assisted him, that the defendant is criminally responsible for the actions of Brooks. We conclude there is no error in the charge to the jury concerning criminal responsibility for another. The record reveals that there are at least two theories as to the killing of Michael Lawrence. Clearly, there is the theory that the defendant shot the victim, supported by evidence of the defendant's confession, as well as other witnesses, including Marco Brooks's testimony. Additionally, there is an alternative theory to the crime, that it was Brooks who was the killer and the defendant was criminally responsible for Brooks's actions. As such, the jury charge is appropriate.

Accordingly, we hold there was no error in the trial court's jury charge regarding criminal responsibility.

## SENTENCING

The defendant contends that the trial court erred in sentencing him for his first degree murder conviction.[2] Specifically, he claims it was error to use the statutory aggravating factor that the defendant had been convicted of a prior felony. See Tenn. Code Ann.§ 39-13-204(i)(2), which reads in relevant part:

---

[2] The defendant is not appealing the sentences he received for especially aggravated robbery and abuse of a corpse.

-6-

No death penalty or sentence of imprisonment for life without possibility of parole shall be imposed but upon a unanimous finding that the state has proven beyond a reasonable doubt the existence of one (1) or more of the statutory aggravating circumstances which are limited to the following:

* * *

(2) The defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person
. . . .

After finding the defendant guilty of first degree premeditated murder, first degree felony murder, and especially aggravated robbery, the jury heard evidence concerning the penalty phase. Afterwards, the jury found that "[t]he defendant was previously convicted of one or more felonies other than the present charge, the statutory elements of which involve the use of violence to the person." The jury sentenced the defendant to life without the possibility of parole for the first degree murder.

The defendant argues that it was wrong for the jury to use the above aggravating factor because the convictions for the previous felonies the court used occurred after the date of the current offense. He does not argue that the prior convictions did not occur, only that they are not prior convictions as applied to being used as an aggravating factor because the convictions occurred *after* the commission of the offense in the instant case. A time line of relevant events will be useful:

August 24, 1998: Murder of Michael Lawrence in the instant case.

September 11, 1998: Convictions for especially aggravated robbery and attempted first degree murder in unrelated case.[3]

May 19, 2001: Defendant convicted of first degree murder and especially aggravated robbery, and sentenced to life without the possibility of parole in the instant case.

August 20, 2001: Sentencing hearing for especially aggravated robbery in the instant case.

The defendant's main contention is that since the convictions for the prior violent felonies occurred *after* the commission of the current offense, that they are not prior convictions as applied in Tennessee Code Annotated section 39-13-204(i)(2). He cites State v. Reynolds, where this court stated, "[A] 'prior conviction' is defined by statute as a 'conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced.' Tenn. Code Ann. § 40- 35-107(b)(1)." State v. Reynolds, No. M2000-00210-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 381, at *23 (Tenn. Crim. App. May 23, 2001). However, Reynolds was not a capital case, and the prior convictions being used in Reynolds were being used in the context of determining whether that defendant was a persistent offender as set out in Tennessee Code Annotated section 40-35-107(b)(1).

---

[3] Additionally, the trial court stated it used a conviction for Aggravated Robbery, however, an examination of the record failed to reveal that conviction's date. That failure is irrelevant as the other two convictions were clearly included in the technical record.

By contrast, the prior convictions used in the instant case were used in the context of being *aggravating* factors, as required in order to sentence a defendant in a capital case to life without the possibility of parole. In this context, it is only necessary that the defendant be convicted of the prior violent offenses prior to the sentencing in the instant case. Indeed, as our Supreme Court recently stated in addressing this issue:

> Our Supreme Court has recently reiterated its oft-repeated holding that, "so long as a defendant is *convicted* of a violent felony *prior* to the sentencing hearing at which the previous conviction is introduced, this aggravating circumstance is applicable." State v. Hodges, 944 S.W.2d 346, 357 (Tenn. 1997) (emphasis in original). In State v. Nichols, 877 S.W.2d 722, 736, the Court specifically rejected the defendant's contention of a due process violation, even where the prosecutor admitted that the defendant's multiple trials had been ordered in such a way as to create an additional aggravating circumstance.

State v. Stout, 46 S.W.3d 689, 719 (Tenn. 2001) (appendix). While the defendant in Stout argued that the use of the aggravator was unconstitutional due to a violation of *ex post facto* laws, the language of our Supreme Court clearly indicates that it is not a due process violation to use a prior conviction that occurs prior to an instant case's sentencing as satisfying the statutory aggravating factor as applied to Tennessee Code Annotated section 39-13-204(i)(2). Accordingly, we conclude this issue is without merit.

## CONCLUSION

After a careful review of the record, we hold that the trial court properly denied the defendant's motion to suppress his December 2, 1998 statement, that the jury was properly charged as to criminal responsibility, and that there was no error in the use of the defendant's prior conviction as a sentencing aggravating factor. The defendant's due process rights were not violated during his sentencing for first degree murder. We affirm all judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE