# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 13, 2010

## NESHA NEWSOME v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 01-00561; 01-00563    John P. Colton, Jr., Judge**

---

**No. W2009-01114-CCA-R3-PC  - Filed March 2, 2011**

---

The Petitioner, Nesha Newsome,[1] filed in the Shelby County Criminal Court a petition for post-conviction relief from her convictions for especially aggravated kidnapping, aggravated kidnapping, aggravated robbery, and robbery.  The Petitioner contended that her trial counsel were ineffective by failing to object to the trial court's definition of "aiding" in response to the jury's question regarding the criminal responsibility jury instruction, failing to argue that her convictions violated due process, and failing to have the Petitioner undergo a pretrial mental evaluation.  The post-conviction court denied the petition, and the Petitioner now appeals.  In addition to the foregoing issues, the Petitioner also asserts that the supreme court's denial of funding for a forensic psychologist violated her federal and state due process rights.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Nesha Newsome.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee.

## OPINION

### I.  Factual Background

---

[1]  In the record, the Petitioner is also referred to as "Nesha Newson."

On direct appeal, this court summarized the facts at trial as follows:

On New Year's Eve, 1999, Bryan Morris and Holly Richardson (the victims in this case) were attending a party at a friend's house in East Memphis. Around midnight, the victims left to get something to eat. Both of them lived in Bartlett and were not familiar with East Memphis. Miss Richardson drove Mr. Morris's car because he was too intoxicated to drive. They followed some other people from the party to the store. Before reaching their destination, the pair lost sight of their friends from the party. The victims became lost in an unfamiliar part of town. They stopped at a gas station to use a payphone. However, they were unable to contact anyone from the party.

Nesha Newsome (the [Petitioner]), Jermaine Bishop, and Mozella Newsome were outside the gas station where the victims stopped. Miss Richardson asked the group if they could help her, because she was lost. Initially, the group tried to give her directions. They then agreed to ride with the victims and show them how to get back to the party. Miss Richardson agreed to bring them back after they found out how to get to the party. The three got into the backseat of the car that Miss Richardson was driving. Bishop instructed her to drive across the street to an apartment complex. Bishop and Mozella Newsome went inside, while the [Petitioner] remained in the car with the victims. They soon returned, and the group left, with Bishop giving directions.

On the way back to the party, Mr. Morris became ill because of his intoxication, and the group had to pull over. He went into a gas station, and Miss Richardson attempted to clean off the side of the car where Mr. Morris had vomited. The [Petitioner], Bishop, and Mozella Newsome remained in the backseat of the car. Mr. Morris returned to the car, and the group again set out to find the party. On the way, Bishop and Mozella Newsome began whispering. They informed the [Petitioner] that they intended to "stick up" the victims. The group soon arrived at their destination. The victims went inside to inform their friends as to their getting lost. The [Petitioner], Bishop, and Mozella Newsome remained in the car with the

-2-

engine running. At one point, a friend of the victims came out and talked with them. The victims were in the house for several minutes. They returned to the car and left to take the trio back to the area where they had been picked up.

Bishop directed Miss Richardson to an area that she was not familiar with. He told her that they were going to his grandmother's house. At one point, Bishop told Miss Richardson to stop and turn out the lights. Believing that they had arrived at his grandmother's house, she complied. Bishop got out of the car and pulled a gun. He ordered them out of the car. Mr. Morris gave his wallet to Bishop. Bishop then punched Mr. Morris in the face a couple of times and threw him in the backseat with Miss Richardson and the [Petitioner]. Bishop got into the driver's seat, and Mozella Newsome got into the front passenger seat. Bishop gave the gun to Mozella Newsome. She turned around and pointed the gun at the victims while Bishop drove for several miles.

As they drove, Miss Richardson screamed for help. Bishop instructed the [Petitioner] to "shut her up." The [Petitioner] punched Miss Richardson numerous times in the head and face while restraining her by her hair. The [Petitioner] would later say that "[she] hit her with all [her] might." The [Petitioner] called her "a little Bartlett bitch" and continued beating her. At some point, the [Petitioner] told Miss Richardson to open her mouth. The [Petitioner] then burned her tongue with a cigarette and forced her to swallow the ashes. The [Petitioner] also struck Mr. Morris a few times. Miss Richardson asked the [Petitioner] if she was going to kill her. The [Petitioner] smiled and patted her on the head saying, "[n]o Sweetie, I'm not going to kill you." She then continued to beat Miss Richardson. She stated that the [Petitioner] was laughing and smiling the entire time. Bishop said that they should make Miss Richardson perform oral sex on the [Petitioner]. However, they never followed through. The group just laughed, and the [Petitioner] continued hitting her.

Mozella Newsome was pointing the gun at Mr. Morris while they were driving. He noticed that they had turned onto

a dead end road. Sensing that "something bad was about to happen," he jumped from the car as they made a turn. Mr. Morris sustained a broken finger from the impact. The assailants and Miss Richardson continued on in the car. They stopped a few minutes later and ordered Miss Richardson out of the car. She was forced to give up her rings and all of her clothes, except for her socks. She ran into the woods naked and bleeding. Miss Richardson hid and waited for the group to leave. After they left, she ran from house to house trying to get help. Ms. Hammelore Stewart answered her door and helped the victim. Miss Richardson sustained a broken nose and numerous bruises as a result of the incident. She was in pain for approximately two weeks.

State v. Nesha Newsome, No. W2002-01306-CCA-R3-CD, 2003 WL 23100597, at **2-3 (Tenn. Crim. App. at Jackson, Dec. 30, 2003) (footnotes omitted).

Based upon the foregoing, the Petitioner was found guilty of the aggravated kidnapping of Morris, the especially aggravated kidnapping of Richardson, the aggravated robbery of Richardson, and the robbery of Morris. The trial court sentenced the Petitioner as a standard Range I offender to ten years, twenty-one years, ten years, and four years, respectively. The court ordered the sentences to be served consecutively for a total effective sentence of forty-five years. On appeal, this court affirmed the Petitioner's convictions and the four-year robbery sentence. Id. However, this court reduced her ten-year sentences to nine years, and her twenty-one year sentence was reduced to twenty years. Id.

Subsequently, the Petitioner filed for post-conviction relief, alleging that her trial counsel were ineffective. Post-conviction counsel was appointed, and several amended petitions were filed. On September 30, 2008, post-conviction counsel petitioned the post-conviction court for funds for a forensic psychologist. The post-conviction court granted the petition, but the supreme court later denied the petition pursuant to Tennessee Supreme Court Rule 13.

Thereafter, on December 5, 2008, a post-conviction hearing was held. The Petitioner alleged that trial counsel was ineffective by failing to argue that her kidnapping and robbery convictions violated due process, by failing to object to the definition of "aiding" given by the trial court in response to the jury's question regarding the criminal responsibility charge, and by failing to have a pretrial psychological evaluation of the Petitioner.

The Petitioner's lead trial counsel testified that she began representing the Petitioner

-4-

in 2001 and that co-counsel joined her approximately one week before trial. She said the Petitioner's case was the first jury trial in which she was lead counsel. She thoroughly investigated the Petitioner's case and had numerous meetings with the Petitioner. Lead counsel testified that the Petitioner was originally to be tried with her two co-defendants. A few days before the trial was to begin, the attorneys met with the trial judge to discuss the scheduling conflicts of co-defendants' counsel. Lead counsel said that all three attorneys expected that the trial would be continued. However, the trial court severed the Petitioner's case and ordered counsel to go to trial as scheduled. Counsel requested a continuance, but the request was denied.

Lead counsel stated that she did not have a forensic psychological evaluation of the Petitioner before trial. However, she had a report from Leslie Star Associates in Chicago, Illinois, regarding a mental evaluation which had been conducted on the Petitioner four months prior to the instant offenses. The report reflects that the Petitioner had a low IQ and a "disorder." The report states that the Petitioner's IQ is 68 but explains that the score could be partially attributable to the Petitioner's constant truancy from school and that the score was likely an underestimation of the Petitioner's abilities. The report further provides that the Petitioner has a mild depressive disorder. Lead counsel had planned to use the report during the Petitioner's sentencing hearing. However, when the Petitioner's case was severed, lead counsel concluded that "it became very important to have that expert testimony during the guilt/innocence phase." She requested a continuance so she could have the Petitioner evaluated, but the trial court denied the request because of the lateness of the request. Counsel stated that in hindsight she should have had an evaluation ready for use in the guilt phase but that she had made an initial, strategic decision to use the Petitioner's mental health issues in mitigation during the sentencing phase.

Lead counsel acknowledged she did not argue that the Petitioner's dual convictions for the aggravated kidnapping and robbery of the victims violated double jeopardy and should have merged into a single conviction for each victim. She conceded that she could not recall why the issue was not raised.

Lead counsel said that during deliberations, the jury asked the trial court for a definition of "aiding" in the instruction on criminal responsibility. Lead counsel stated that the trial court obtained the definition from a dictionary, as was the court's "standard operating procedure." She said she did not see anything wrong with the definition and did not object. She also acknowledged that objecting to the definition would "look bad" and that she made a strategic decision not to object.

Co-counsel testified that he was contacted by lead counsel approximately a week before trial. The appellant was not evaluated after co-counsel became involved in the case

because of time constraints. However, in his view the Petitioner should have been evaluated. He stated that he repeatedly asked the court for a continuance to have the Petitioner evaluated, emphasizing that their strategy changed because of the severance. The requests were denied. Nevertheless, co-counsel sought to have records regarding a prior mental evaluation introduced at trial. The trial court ruled that the defense had not filed the proper notice; therefore, the records were inadmissible.

Co-counsel stated that he did not raise an issue regarding the Petitioner's dual convictions for kidnapping and robbery. He said he did not think the facts of the Petitioner's case supported a merger of the convictions. Co-counsel agreed with lead counsel's assessment that there was no reason to object to the trial court's definition of "aiding."

The Petitioner did not testify at the post-conviction hearing.

After the hearing, the post-conviction court entered an order denying the petition. The court found that the Petitioner failed to prove that counsel were ineffective for failing to object to the trial court's definition of "aiding" in relation to the criminal responsibility jury instruction, failing to argue that her convictions for kidnapping and robbery violated due process, and failing to have a pretrial mental evaluation performed on the Petitioner. On appeal, the Petitioner challenges this ruling.

## II. Analysis

### A. Ineffective Assistance of Counsel

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in her post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's

findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Regarding the Petitioner's first issue, the trial court, in response to a jury question, defined "aiding" as "simply what one would normally expect it to be, and that is to aid means to give help or support or to further or to facilitate or to assist." The Petitioner argues that the definition of "aiding" was misleading because it included the phrase "to facilitate." The Petitioner maintains that the definition could have swayed the jury into finding the Petitioner guilty of a principal offense under a theory of criminal responsibility instead of a lesser-included offense of facilitation. Accordingly, she contends counsel were ineffective for failing to object to the definition given by the trial court.

Initially, we note that "[a] trial court has the authority to respond to jury questions with a supplemental instruction." State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995). Further, "[i]t is appropriate for the jury to be provided with dictionary definitions of words or terms not in common use and not understood by persons of reasonable intelligence." State v. Bowers, 77 S.W.3d 776, 790 (Tenn. Crim. App. 2001). In our view, "aiding" is a common word which is easily understood by a person of reasonable intelligence. Therefore, a supplemental instruction on the definition was unnecessary. However, a charge

results in prejudicial error only when it fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). Lead and co-counsel stated that they believed the definition of "aiding" given by the trial court was accurate. We agree. Our supreme court has previously observed that "'[t]he justification for th[e] theory of criminal [responsibility] is that, in addition to the primary criminal actor, aiders and abettors should be held accountable for the criminal harms they intentionally *facilitated* or helped set in motion.'" State v. Hatcher, 310 S.W.3d 788, 811 (Tenn. 2010) (emphasis added) (quoting State v. Sherman, 266 S.W.3d 395, 408 (Tenn. 2008)). Because there was no reason to object, counsel were not deficient and therefore were not ineffective.

Next, the Petitioner argues that her counsel were ineffective by failing to argue that her convictions for both kidnapping and robbery of each victim violated double jeopardy. In support of her argument, the Petitioner cites State v. Anthony, 817 S.W.2d 299, 306 (Tenn. 1991), which provided that separate convictions for kidnapping and robbery may be supported only if the confinement was not "essentially incidental to the accompanying felony." The Petitioner also cites State v. Dixon, 957 S.W.2d 532, 534-35 (Tenn. 1997), wherein our supreme court replaced the Anthony "essentially incidental" analysis with a two-part test: whether the confinement was beyond that necessary to commit the accompanying felony and whether the additional confinement prevented the victim from summoning help; lessened the defendant's risk of detection; or created a significant danger or increased the victim's risk of harm. Thereafter, our supreme court held that "the Anthony analysis should not be used in conjunction with the Dixon two-part test. The Dixon test should be used exclusively in all future inquiries." State v. Richardson, 251 S.W.3d 438, 443 (Tenn. 2008).

In the instant case, lead counsel could not recall why she did not raise a double jeopardy complaint. However, co-counsel asserted that he believed the facts of the case did not support a double jeopardy argument. The post-conviction court accredited the testimony of co-counsel. Upon examining the facts, we conclude that the argument would have been unavailing. Accordingly, the Petitioner is not entitled to post-conviction relief on this issue.

The Petitioner also contends that counsel were ineffective by failing to have a pretrial mental evaluation performed on the Petitioner to determine whether a mental health defense was available. The Petitioner maintains that counsel had a report reflecting that the Petitioner had an IQ of 68 and suffered from depression, which should have prompted counsel to have the Petitioner evaluated. However, the Petitioner did not present testimony from a mental health expert at the post-conviction hearing to indicate that a mental health defense could have been supported. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of [her] defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State,

794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on the benefit such a witness might have offered to the petitioner's case, nor may we guess as to any evidence further investigation may have uncovered. Id. Further, the Petitioner did not testify at the post-conviction hearing regarding what effect, if any, her mental health had on her behavior during the offenses. Therefore, even if counsel were deficient, there was no evidence before the post-conviction court to establish prejudice. Accordingly, the post-conviction court did not err in finding that the Petitioner failed to prove ineffective assistance in this regard.

## B. Denial of Funding for Expert Witness

As the final issue, the Petitioner contends that the supreme court's "denial of funding for a forensic psychologist violated her federal and state rights to due process and constituted cruel and unusual punishment under the federal and state constitutions." However, she acknowledges that Tennessee Supreme Court Rule 13(5)(a)(2) provides that funding for expert services for non-capital post-conviction proceedings shall not be authorized. Our appellate courts have held that "the state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995); see also Kevin Jones v. State, No. W2009-02051-CCA-R3-PC, 2010 WL 4812773, at *4 (Tenn. Crim. App. at Jackson, Nov. 19, 2010), application for perm. to appeal filed, (Jan. 19, 2011); Johnny Rutherford v. State, No. E1999-00932-CCA-R3-PC, 2000 WL 246411, at *18 (Tenn. Crim. App. at Knoxville, Mar. 6, 2000). Moreover, the Petitioner's argument that the denial of funds violates due process and constitutes cruel and unusual punishment has been previously considered and rejected by this court. See Trevor Ford v. State, No. W2009-02434-CCA-R3-PC, 2010 WL 3970369, at *8 (Tenn. Crim. App. at Jackson, Oct. 8, 2010), perm. to appeal denied, (Tenn. 2011); Wayne Lydell Holt v. State, No. M2009-00933-CCA-R3-PC, 2010 WL 2867185, at *6 (Tenn. Crim. App. at Nashville, July 22, 2010), perm. to appeal denied, (Tenn. 2010). Accordingly, the Petitioner is not entitled to relief on this issue.

## III. Conclusion

In sum, we conclude that the Petitioner failed to establish that her counsel were ineffective or that her constitutional rights were violated by the denial of an expert in her post-conviction proceeding. Therefore, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE