IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2019 Session

**DAVID BLACK v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 15-00541          Paula L. Skahan, Judge
_____

**No. W2019-00308-CCA-R3-PC**
_____

The Petitioner, David Black, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions of attempted rape of a child and aggravated sexual battery and resulting twelve-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to object to the trial court's jury instruction on aggravated sexual battery and failed to argue in his motion for new trial that the instruction was erroneous, trial counsel advised him not to testify at trial, and appellate counsel failed to argue on direct appeal of his convictions that the proof did not meet the elements of aggravated sexual battery. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, David Black.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In February 2015, the Shelby County Grand Jury indicted the Petitioner for attempted rape of a child and aggravated sexual battery, Class B felonies. In April 2016, a jury found him guilty as charged in the indictment.

On direct appeal of the Petitioner's convictions, this court gave the following account of the evidence presented at trial:

[T]he victim, D.S., was 15 years old at the time of trial. In 2008, when the victim was eight years old, she and her mother began living with her aunt, A.Y., and A.Y.'s husband, the defendant. Shortly thereafter, the victim's mother moved out of the residence, and the victim continued to reside with A.Y. and the defendant. In 2010, A.Y. and the defendant divorced, but the victim would often accompany her younger brother and her male cousins, C.Y. and D.B., to visit the defendant at his residence on certain weekends.

C.Y., who was also 15 years old at the time of trial, testified that the defendant treated the victim differently than the other children and that the defendant would spend more time with her:

[The defendant will] let [the victim] do things like drive his car and he'll let me drive for like a few minutes and then he'll let her drive for the rest of the time that we're there until we go home.

And then as far as food-wise, as if we'll have cookies and ice cream, I wouldn't have the cookies but he'll give her more of the food than he'll give me and [D.B.] because he'll say we either had enough or she didn't—we didn't have enough for her, so he'll give her the rest of the food.

C.Y. also recalled that the defendant would separate the victim from the other children on occasion. According to C.Y., the defendant would tell the boys to go outside to play, and he would make the victim stay inside "to clean up or help him with something or cook." When C.Y. and the other boys would attempt to reenter the residence while the victim was alone with the defendant, the defendant would permit them to get a drink of water but then make them return outside without the victim. The victim confirmed that the defendant would sometimes separate her from the boys.

- 2 -

In April 2013, the 12-year-old victim and her cousins, C.Y. and D.B., spent the weekend with the defendant at his home while the victim's mother and A.Y. traveled to Chicago for a funeral. On the Saturday night of the victim's stay, the defendant attempted to convince the victim "to have sex with him" while C.Y. and D.B. were both sleeping nearby. When the victim refused, the defendant told her that "it's not going to hurt" and made multiple attempts to remove the victim's pajama pants and underwear. Because the victim continued to resist, the defendant grabbed the victim around her waist and turned her body over on the bed, with her hands on the bed and her feet on the floor. The defendant was eventually able to pull down the victim's pants and underwear. The victim saw the defendant applying Vaseline to his erect penis, which was protruding through the opening in his boxer shorts.

The victim touched the defendant's penis "when [she] was trying to push him off [of her] when he kept coming forward." The victim noticed that the defendant's penis was "standing up" and that "it was hard and slimy from the Vaseline." As the victim continued in her attempts to fend him off, the defendant asked, "[Y]ou won't even do this for me after I let you drive my car?" The victim confirmed that the defendant had permitted her to drive his vehicle even though she was only 12 years of age at the time. The victim testified that the defendant attempted to penetrate her with his penis but that he was unsuccessful because she "kept telling him to stop and pushing him off and then once [she] got [her] clothes up" she escaped to the bathroom. The victim stated that both C.Y. and D.B. slept through the incident and that she purposely remained quiet because she "didn't want them to wake up and see that." When the victim reentered the defendant's room, the defendant was angry, but he made no further attempts to assault the victim.

On cross-examination, the victim acknowledged that she had later told her interviewer at the Child Advocacy Center that the defendant's sexual assault had occurred on April 4, 2013, and that it was on "a Wednesday or a Thursday."

The victim initially told no one what had transpired. On March 26, 2014, Memphis Police Department ("MPD") Officer Clayton Turner reported to a local middle school to give a presentation on "gangs, bullying and [inappropriate] touching." Shortly after he began his presentation, the victim and a teacher approached him. Officer Turner noticed that the victim appeared upset, and he directed her to speak with fellow MPD

- 3 -

Officer Stacey Hughes. After Officer Hughes took the victim outside, the victim informed Officer Hughes that "her aunt['s] husband" had touched her inappropriately. As Officer Hughes pressed the victim for more details, the victim began "crying just uncontrollably" and "shaking really, really bad." Officer Hughes continued as follows:

> And [the victim] said that her aunt's husband, [the defendant], had touched her. And I say, okay, well, . . . tell me what you mean by touching you. And she starts crying again. She's still shaking at this point. Then she said that he had taken her clothes off and touched her all over her body. . . . And I say okay. So I told her to continue on. And she still, she's still crying, shaking. Through the whole conversation she's continued to cry and shake. And she said about a year prior to that he had, at his rooming house, that he had tried to stick his penis in her behind but that she was able to push him off.

Officer Hughes then contacted her MPD lieutenant who in turn contacted the sex crimes unit.

A.Y. testified that the funeral she had attended in Chicago which had occasioned her leaving the victim, C.Y., and D.B. with the defendant, had occurred on the weekend of April 20, 2013. A.Y. recalled leaving the children with the defendant on Thursday night, April 18, and picking them up on Sunday, April 21.

With this evidence, the State rested. Following a <u>Momon</u> colloquy and the trial court's denial of the defendant's motion for judgments of acquittal, the defendant elected not to testify but did choose to present proof.

Lynn Staggs, chief financial officer of D & W Plating Company, testified that the defendant had clocked in for work at 4:43 a.m. on April 4, 2013, and clocked out at 3:35 p.m. On April 5, the defendant clocked in at 5:02 a.m. and clocked out at 3:33 p.m. Ms. Staggs testified that the defendant did not work on Saturday, April 6 or Sunday, April 7.

Barry Brown testified that the defendant had rented a room from him in 2013, and through Mr. Brown's testimony, the defense introduced into evidence photographs of the furnishings in the defendant's room as it appeared in 2013.

- 4 -

State v. David Black, No. W2016-02478-CCA-R3-CD, 2017 WL 4217168, at *1-2 (Tenn. Crim. App. at Jackson, Sept. 21, 2017) (footnotes omitted).

After the jury convicted the Petitioner, the trial court merged the conviction of attempted rape of a child into the conviction of aggravated sexual battery and sentenced him as a Range I offender to twelve years to be served at one hundred percent. On direct appeal of his convictions, the Petitioner claimed, in pertinent part, that the evidence was insufficient to support the convictions because the State produced only the victim's testimony to support the allegations, the victim did not report the crime for one year, and the victim's trial testimony was inconsistent with her interview at the Child Advocacy Center. This court found the evidence sufficient, stating,

In the instant case, the proof at trial established that, during a weekend in April 2013 when the 12-year-old victim was staying at the defendant's residence, the victim touched the defendant's erect penis while she was attempting to push him away from her, which was sufficient to establish the defendant's conviction of aggravated sexual battery. With respect to the conviction of attempted child rape, the victim testified that the defendant urged her to engage in sexual intercourse with him and that, when she refused, he repeatedly attempted to remove her pajama pants and underwear. He eventually flipped the victim over onto her stomach on the bed, removed her pants and underwear, placed Vaseline on his erect penis, and repeatedly attempted to penetrate the victim with his penis from behind. This testimony cogently established the defendant's attempted sexual penetration of the victim. Although the defendant questioned the victim's conflicting testimony about the exact date of the assault and the sleeping positions of C.Y. and D.B. during the assault, such matters of witness credibility and evidentiary weight are within the exclusive province of the trier of fact, and this court will not reweigh such evidence. See [State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011)].

Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial more than sufficiently established the defendant's convictions of attempted rape of a child and aggravated sexual battery.

Id. at *5.

The Petitioner filed a timely pro se petition for post-conviction relief, claiming that trial counsel was ineffective. The post-conviction court appointed counsel, and post-

conviction counsel filed an amended petition. Relevant to this appeal, the Petitioner alleged in the amended petition that he received the ineffective assistance of counsel because trial counsel failed to object when the trial court defined "sexual contact," which was an element of aggravated sexual battery, in the jury instruction for attempted rape of a child; trial counsel failed to raise the instruction issue in the Petitioner's motion for new trial; trial counsel failed to explain adequately the "pros and cons" of testifying at trial, which resulted in the Petitioner's decision not to testify; and appellate counsel failed to argue on direct appeal of the Petitioner's convictions that the evidence was insufficient to support the conviction of aggravated sexual battery because the proof at trial showed that the victim touched the Petitioner's penis accidentally.

At the evidentiary hearing, trial counsel testified that he was appointed to represent the Petitioner in February 2015 and that the Petitioner went to trial in April 2016. Trial counsel met with the Petitioner eight times in jail and spoke with him in court. Trial counsel said that he provided discovery to the Petitioner and that they discussed the parts of the discovery counsel thought were important. The Petitioner told trial counsel his side of the story and thought the victim made the allegations because he refused to buy her a new cellular telephone. Trial counsel and the Petitioner discussed trial strategy. The Petitioner wanted to testify, and trial counsel prepared him to testify. However, the Petitioner "tended to ramble a lot" during practice, and trial counsel told him that he "needed to be careful of what he said when he got on the stand because he could potentially open the door" to additional allegations by the victim.

Trial counsel testified that he filed a motion to suppress the victim's additional allegations just before trial and that the trial court granted the motion. Trial counsel said that during the trial, he and the Petitioner practiced the Petitioner's testimony in the back of the courtroom but that "by the third question, in my opinion, he had already opened the door" to the allegations. Trial counsel told the Petitioner, "[L]ook, you're going to mess this up if you testify. If all this stuff that we just kept out gets in, you have no chance." Post-conviction counsel asked how the Petitioner could have opened the door, and trial counsel answered,

> I don't remember very many specifics. There is one thing that I do remember I was worried about. He always -- it was a big deal for him that when they got custody of [the victim], how filthy she was and how bad her lifestyle was and how they brought her home and bathed her that night. He gave her a bath. Well, a lot of her allegations involved bath time. It involved -- she was saying that when she got out of the bath, he would try to come into the bathroom. She'd hide behind the door and he would try to tell her to get out from behind the door or peek behind the door. On a separate occasion, she alleged that when she got out of the bathtub, he

- 6 -

rubbed his penis on her back. And those were all things that we were able to keep out. And when I said that third question back there that we were working on, first thing he wants to get into is that he had to bathe her and clean her up. And my fear was that even talking about anything involving bath time was going to open the door to all these allegations that occurred in bath time.

Trial counsel testified that he told the Petitioner "long before we ever got to trial" that the Petitioner "didn't need to really talk about [bathing the victim] because it would look bad." However, the Petitioner "always came back to it because it's a big deal for [the Petitioner]. It's one of the things he hung his hat on." Trial counsel thought that if the Petitioner opened the door, then the defense was in "big trouble." Trial counsel told the Petitioner that he did not think the Petitioner should testify but that it was ultimately the Petitioner's decision. The Petitioner decided to take trial counsel's advice, and the trial court held a Momon hearing. Trial counsel said that the Petitioner had a criminal record but that the State did not file a notice of impeachment.

Trial counsel testified that after the State rested its case-in-chief, he made a motion for judgment of acquittal because the victim had testified that she touched the Petitioner's penis when she pushed him away. Trial counsel thought the victim's testimony "came across as she accidentally touched his penis" when aggravated sexual battery required an intentional touching. Trial counsel also raised the issue in the Petitioner's motion for new trial.

Trial counsel testified that he reviewed a draft of the final jury instructions and that the parties discussed the draft with the trial court. The parties advised the trial court that the definition of "sexual contact," which was an element of aggravated sexual battery, was missing from the draft, and the trial court agreed to add the definition. However, the trial court instructed the jury on "sexual contact" as part of the instruction for attempted rape of a child, not aggravated sexual battery. Trial counsel said that he did not notice the definition was misplaced but that "it's defined in there and they know to reference it, so. I don't think it made much of a difference." Post-conviction counsel asked if the jury could have thought the definition of "sexual contact" applied to the instruction for attempted rape of a child, and trial counsel answered, "I mean, just about anything's possible, but I didn't speak to the jury afterward, so I don't know what their thinking was." Trial counsel said he did not raise the misplaced definition in the Petitioner's motion for new trial because "[a]ssumption would be I didn't notice or I didn't care. . . . Again, I think because it's listed in there and they have the definition, they can refer back to the definition. I don't think it made much of a difference."

On cross-examination, trial counsel testified that at the time of the Petitioner's trial, he had been practicing law for eleven years and that he only practiced criminal defense. The Petitioner's trial was trial counsel's fourth trial. Trial counsel said that he had "multiple jail visits" with the Petitioner in which they practiced the Petitioner's trial testimony. Trial counsel finally decided that the Petitioner should not testify, and the Petitioner agreed with his recommendation. Trial counsel raised the accidental touching issue as part of his sufficiency argument in the motion for judgment of acquittal and the Petitioner's motion for new trial. He said he did not know if appellate counsel raised the issue. Trial counsel acknowledged that although the definition of "sexual contact" related to the offense of aggravated sexual battery, the trial court put the definition in the instruction for attempted rape of a child. Trial counsel said he did not consider raising the misplaced definition in the Petitioner's motion for new trial because the definition was included in the jury charge and the jury could "refer back to it."

Trial counsel testified that at the time of the Petitioner's trial, the Petitioner had prior convictions involving cocaine but that the State was unaware of those convictions. Trial counsel warned the Petitioner that if the Petitioner was successful on direct appeal, received a new trial, and was convicted again, he could be sentenced as a Range III offender. There also was a question of whether the trial court should have merged the conviction of attempted rape of a child into the conviction of aggravated sexual battery. Therefore, in the event of a retrial, the Petitioner could be facing a sentence of twenty to thirty years for each conviction for a total effective sentence of forty to sixty years.

Appellate counsel testified that he represented the Petitioner on direct appeal of the Petitioner's convictions. Appellate counsel reviewed the trial transcript and noticed that trial counsel argued in the motion for judgment of acquittal and in the motion for new trial that the facts did not support aggravated sexual battery because the victim touched the Petitioner's penis when she pushed him away from her. However, appellate counsel did not raise that issue in his appellate brief. Post-conviction counsel asked why appellate counsel did not make that argument, and appellate counsel said that the issue was "interesting" but that he did not think it was a "viable" argument. Appellate counsel stated, "I was more concerned with what I considered to be 404(b) things. And I did raise sufficiency of the evidence, but I did not specifically address that."

On cross-examination, appellate counsel testified that at the time of the Petitioner's appeal, he had been practicing law thirty-two years and that twenty-five years of that time was "solely criminal." He acknowledged that the Petitioner's defense at trial was that the touching was accidental. On direct appeal of the Petitioner's convictions, appellate counsel argued that the evidence was insufficient to support the convictions due to inconsistencies in the proof. He acknowledged that this court stated in its opinion affirming the Petitioner's convictions that the victim's touching the Petitioner's erect

penis while she was pushing him away was sufficient to support the conviction of aggravated sexual battery. On redirect examination, he acknowledged that this court may have addressed the issue further if he had specifically argued that the touching was accidental.

The Petitioner testified that trial counsel met with him in jail seven or eight times and that they discussed his case. They talked about whether he would testify, and he told trial counsel that he wanted to testify. At first, trial counsel agreed that the Petitioner should testify. The Petitioner stated, "But as I explained to him what really happened, he would say, well, you can open doors." The Petitioner did not understand what "open doors" meant.

The Petitioner testified that he and trial counsel discussed some of the "pros and cons" of his testifying at trial but that trial counsel "mainly focused on the cons." As for the "pros," trial counsel "mentioned" that the State could not impeach him with prior convictions. Regarding the "cons," trial counsel told him that he could go to prison and be on community supervision for life. They practiced the Petitioner's testimony, and the Petitioner wanted to testify about how the victim came to stay with him and his family. However, trial counsel told the Petitioner that "you're going too far back" and that "that will open the door." Trial counsel also told the Petitioner that he "ramble[d] a lot." The Petitioner denied that he kept trying to testify about bathing the victim and said that trial counsel "had to get that from the [victim's] report . . . because I never mentioned that."

The Petitioner testified that during the trial, he and trial counsel had a discussion in the back of the courtroom but that they did not practice his testimony. The Petitioner told trial counsel that he was ready to tell the jury his side of the story, but trial counsel told him that "you tend to ramble on a lot, and you tend to say things . . . that [are] not important." Trial counsel "kind of encouraged" the Petitioner not to testify, and the Petitioner took trial counsel's advice because he trusted trial counsel. He said that he told trial counsel he did not commit the crimes and that he should have testified at trial.

On cross-examination, the Petitioner acknowledged that a hearing occurred in which the victim testified that he tried to come into the bathroom while she was undressed. He also acknowledged that trial counsel was able to keep her testimony out of evidence at trial. The Petitioner never mentioned in his practice testimony that he was in the bathroom with the victim or that he had to bathe her because she was dirty. He said he wanted to testify at trial because "I wanted to speak and just tell the whole story, but it wasn't pertaining to washing. That wasn't even in the story." The Petitioner said he would have told the jury the truth about what happened and why the victim may have made the allegations.

- 9 -

In a written order, the post-conviction court denied the petition for post-conviction relief. First, the court addressed trial counsel's failure to object to the trial court's defining "sexual contact" as part of the instruction for attempted rape of a child instead of the instruction for aggravated sexual battery and trial counsel's failure to raise the issue in the Petitioner's motion for new trial. The court found that the Petitioner was not prejudiced by the misplaced "sexual contact" definition because the definition was included in the instructions and informed the jury that the touching had to be intentional. Next, the post-conviction court addressed trial counsel's advising the Petitioner not to testify. The court found that trial counsel met with the Petitioner multiple times and initially wanted the Petitioner to testify but that counsel ultimately decided the Petitioner should not testify because he was concerned the Petitioner would open the door to damaging allegations. The court concluded that trial counsel's advice to the Petitioner was "sound trial strategy that was based on adequate preparation." Finally, the post-conviction court addressed the Petitioner's claim that appellate counsel was ineffective for failing to argue that the evidence was insufficient to support aggravated sexual battery because the evidence showed the victim touched the Petitioner's penis accidentally. The court determined that "it was appellate counsel's strategic choice not to include this claim" and stated that the court would not "second-guess appellate counsel's sound strategy." Accordingly, the court concluded that the Petitioner was not entitled to post-conviction relief.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The Petitioner contends that trial counsel was ineffective because he failed to object to the trial court's jury instruction on aggravated sexual battery and failed to allege in his motion for new trial that the instruction was erroneous. The State argues that the Petitioner has failed to demonstrate deficient performance or prejudice. We conclude that the Petitioner is not entitled to relief.

At the conclusion of the proof at trial, the trial court first instructed the jury on attempted rape of a child and then aggravated sexual battery. Although "sexual contact" is an element of aggravated sexual battery, the trial court defined the term during the instruction for attempted rape of a child. Trial counsel testified at the evidentiary hearing that he did not notice the trial court misplaced the definition and that he did not raise the issue in the Petitioner's motion for new trial because the definition was included in the instructions and the jury could refer back to the definition.

"It is well settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." Dorantes, 331 S.W.3d at 390. Previously, we have noted that "[w]e must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995).

- 11 -

Generally, a charge "is erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). "In order to determine whether a conviction should be reversed on the basis of an erroneous instruction to the jury, this Court must consider whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." State v. James, 315 S.W.3d 440, 446 (Tenn. 2010) (citations omitted). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005).

Turning to the instant case, the trial court should have defined "sexual contact" as part of the instruction for aggravated sexual battery, not attempted rape of a child. Therefore, trial counsel was deficient for not noticing and objecting to the misplaced definition. That said, the trial court defined "sexual contact" for the jury and advised the jury during the instruction for aggravated sexual battery that "[t]he essential elements necessary to constitute . . . aggravated sexual battery have been previously set out and defined in these instructions." Generally, we presume that a jury has followed the trial court's instructions. See State v. Butler, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994). Therefore, we conclude that the Petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to object or failure to argue in his motion for new trial that the aggravated sexual battery instruction was erroneous.

The Petitioner also contends that trial counsel was ineffective because trial counsel advised him not to testify. The State argues that the post-conviction properly denied relief on this issue. We agree with the State.

Trial counsel testified that he initially thought the Petitioner should testify at trial and that he and the Petitioner practiced the Petitioner's testimony many times. Based on those practices, though, trial counsel was concerned that the Petitioner was going to open the door to allegations of additional abuse in the bathroom that the trial court had ruled were inadmissible. Trial counsel said that he repeatedly warned the Petitioner that the Petitioner was going to open the door to the allegations, that he finally decided the Petitioner should not testify, and that he told the Petitioner that he did not think the Petitioner should testify but that it ultimately was the Petitioner's decision. The Petitioner corroborated much of trial counsel's testimony, stating that trial counsel warned him that he was going to open the door to additional allegations and that trial counsel "kind of encouraged" him not to testify. Although the Petitioner testified that he never said in his practice testimony that he bathed the victim, the post-conviction court accredited trial counsel's testimony and concluded that trial counsel made a strategic decision to advise the Petitioner not to testify. This court may not "second guess"

- 12 -

counsel's tactical or strategic choices made in the course of trial. <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

Moreover, we note that during the trial, the trial court held a <u>Momon</u> hearing in which trial counsel asked the Petitioner if the Petitioner understood that he had a right to tell "[his] side of the story." The Petitioner said yes. Trial counsel also asked, "And you and I have spent a lot of time talking about this, haven't we? . . . And I've explained to you both the advantages and disadvantages of testifying?" The Petitioner answered both questions in the affirmative and said, "Yeah, I understand what we're doing." Accordingly, we again conclude that he has failed to show that he is entitled to post-conviction relief.

Finally, the Petitioner contends that appellate counsel was ineffective because appellate counsel failed to argue on direct appeal of the Petitioner's convictions that the proof did not meet the elements of aggravated sexual battery. Specifically, the Petitioner contends that the State failed to prove the "sexual contact" element because the victim testified that she touched the Petitioner's penis while she was trying to push him away from her; therefore, she did not touch his penis intentionally or for the purpose of sexual arousal or gratification.

Aggravated sexual battery requires "unlawful sexual contact with a victim by the defendant or the defendant by a victim" when the victim is less than thirteen years of age. Tenn. Code Ann. § 39-13-504(a)(4). As relevant here, "'[s]exual contact' includes the intentional touching of . . . the defendant's . . . intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

As noted by the Petitioner, the victim testified as follows on direct examination:

Q.    Did he -- did you at anytime touch his penis?

A.    Yes.

Q.    Tell me about that[.]

A.    Well I touched his private when I was trying to push him off me when he kept coming forward.

Q.    So you had your hands up?

A.    Yes.

- 13 -

Q.      And when you touched his penis with your hand what did it feel like?

A.      It was like it was standing up, it was hard and slimy from the Vaseline.

. . . .

Q.      Did he try to put his penis on or in your body?

A.      Yes.

Q.      Tell us what he did[.]

A.      He was like, he kept pushing towards me but I kept pushing him off but he still came towards me.

Q.      Was he able [to] put his private part on you or in you?

A.      No.

Q.      What made him stop trying?

A.      Because I kept telling him to stop and pushing him off and then once I got my clothes up I had went into the bathroom.

During closing arguments, the prosecutor argued as follows:

So what evidence do you have in this case of sexual contact? Well, again, we know that the defendant removed [the victim's] clothes. That his penis was exposed and erect. That he put Vaseline on his penis, telling her it's not going to hurt. And we know that [the victim] touched his penis. She, excuse me, she told us that she was on the bed and he was coming toward her and kept pushing himself towards her and his penis is out. She's trying to get him away and she touches his penis. She told you that it was standing up and stiff and felt hard and greasy from the Vaseline.

He had his erect penis exposed pushing himself towards her and she touched him.

At the hearing on the Petitioner's motion for new trial, trial counsel argued, "According to the statute it has to be intentional touching for sexual gratification and she says she was trying to push him away and at that point she accidentally touched him." The Petitioner contends that appellate counsel should have made that argument on appeal. However, the victim's mens rea was irrelevant. In order for the jury to convict the Petitioner of the offense, the State had to prove the following elements of "sexual contact": (1) an intentional mens rea by the Petitioner; (2) a touching of the Petitioner's intimate parts; and (3) the touching could be reasonably construed as being for the purpose of sexual arousal or gratification. See Tenn. Code Ann. § 39-13-501(6). The victim testified that she touched the Petitioner's erect penis because he kept pushing towards her. Therefore, while the touching may have been accidental and not for the purpose of sexual arousal or gratification from her perspective, a reasonable jury could have found that the touching was intentional and for the purpose of sexual arousal or gratification from his perspective. Accordingly, as this court previously concluded, the evidence was sufficient to support the conviction, and the Petitioner has failed to show that he was prejudiced by appellate counsel's failure to raise the issue on direct appeal of his convictions.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE